# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01186-SCT

*BEVERLY ENTERPRISES, INC. AND BEVERLY ENTERPRISES-MISSISSIPPI, INC.*

*v.*

*BARBARA REED*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2005 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LOUIS B. LANOUX |
| | MICHAEL O. GWIN |
| ATTORNEYS FOR APPELLEE: | PHILIP W. THOMAS |
| | PIETER JOHN TEEUWISSEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED- 07/26/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    This nursing home negligence case comes before the Court on appeal from the judgment of the Hinds County Circuit Court, First Judicial District, awarding Plaintiff Barbara Reed $400,000 in compensatory and $1,500,000 in punitive damages. Finding error in the jury instructions and the exclusion of relevant evidence, we reverse and remand for a new trial.

## FACTS

¶2.     Sarah Lewis was admitted to the Beverly-Inglewood care facility in Jackson, Mississippi, on February 27, 2002.  At the time, she was forty-five years of age and had previously incurred a series of strokes, the last of which had left her paralyzed on one side. Lewis suffered from numerous additional medical problems, such as hypertension, chronic anemia, and renal failure. She was unable to speak or walk without assistance, and needed a PEG tube inserted for feeding.

¶3.     Though obviously in poor health at the time of her admittance, Lewis was capable of communicating by nodding and shaking her head, and could use a bedside toilet with support. She had a slight contracture in one arm, and could walk for short distances with the aid of two caretakers. After ten months at Inglewood, Lewis was transferred to Compere Nursing Home at the request of her family. At this time she had significant contractures in all of her limbs, and had become completely bed-ridden and unresponsive. She expired at Compere on June 6, 2003.

¶4.     Barbara Reed, Lewis's sister, brought suit on behalf of her estate against Beverly Enterprises, Inc. (BEI), Beverly Healthcare Inglewood, and Beverly Enterprises–Mississippi, Inc. (BEM). The complaint alleged negligence, abuse and neglect, and medical malpractice, and  claimed  that the Defendants' conduct caused Lewis physical injuries, pain and suffering, mental and emotional distress, and loss of the enjoyment of life.  At no point did Reed claim that BEM or BEI was responsible for Lewis's death.

## TRIAL COURT PROCEEDINGS

¶5.     During the compensatory damages phase of trial, the Plaintiff presented a total of eleven witnesses, including three designated experts, who testified as to BEM and BEI's negligence. Reed was the first to take the stand, and testified that she often found her sister lying in her own waste or in otherwise unsanitary conditions. She said the room was not kept clean, and that Lewis was assaulted by a roommate who BEM knew had a tendency for violent behavior. On cross examination, the Defendants attempted to question Reed about a previous lawsuit filed against Bayer Corporation, but their inquiry was halted by the trial court.

¶6.     Upon conclusion of the evidence, both BEM and BEI moved for directed verdicts, which were denied. The jury returned a general verdict in favor of the Plaintiff in the amount of $400,000. Thereafter, the trial judge determined that the facts of the case warranted a punitive damages hearing. At the conclusion of the punitive phase, the jury awarded Reed an additional $1.5 million dollars. The Defendants' motions for judgment notwithstanding the verdict (J.N.O.V.), new trial and remittur were denied on April 11, 2005. Judgment was entered on March 8, 2005. Notice of appeal was filed on April 20, 2005. The Defendants raise numerous issues on appeal, however, we deem it necessary only to address the following two points.

## DISCUSSION

### I. Error in Jury Instructions

¶7. BEM and BEI contend that they should have been treated as separate entities instead of simply being labeled "the Defendants" in the instructions submitted to the jury. Because the trial court refused to distinguish between them when instructing the jury, the Defendants argue that the standards of care were unjustifiably meshed together into one cause of action.[1]

¶8. When this Court reviews a claim of trial court error in granting or denying a jury instruction, we are required to review all of the instructions as a whole. *Richardson v. Norfolk & Southern Ry.*, 923 So. 2d 1002, 1010 (Miss. 2006). No instruction should be reviewed in isolation. *Burr v. Miss. Baptist Medical Ctr.*, 909 So. 2d 721, 726 (Miss. 2005). When analyzing the grant or refusal of a jury instruction, two questions should be asked: Does the instruction contain a correct statement of law and is the instruction warranted by the evidence? *Hill v. Dunaway*, 487 So. 2d 807, 809 (Miss. 1986). Defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly –although not perfectly–announce the applicable primary rules of law. *Burton v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993). The above standards notwithstanding, this Court will not

---

[1] Instruction D-45, which was refused, sought to specifically instruct the jury to "[d]ecide each defendant's case separately." The Plaintiff's argument, apparently accepted by the trial court, was based upon the premise that "[t]here weren't any separate defenses. There was only one defense in this case, and that is that she was a sick woman and all this was going to happen to her anyway, and that was a joint defense." This conclusion is simply not true; in their respective answers, both Defendants asserted the theory that the injuries complained of were caused by "persons or entities other than this defendant." They also raised Miss. Code Ann. § 85-5-7 (Rev. 1999) and § 11-75-15 (Rev. 2002) dealing with contribution of joint tortfeasors.

4

hesitate to reverse if the instructions, when analyzed in the aggregate, do not fairly and adequately instruct the jury. ***Richardson***, 923 So. 2d at 1011.

¶9.    The instructions given in this case failed to meet even  this rather lenient test, as the jury was completely prohibited from finding one entity guilty without also holding the other liable. The claim against BEM was based upon its actions as owner and operator of Inglewood, while Reed's case against BEI focused on the grandparent corporation's alleged understaffing via the budget system. These are functions which give rise to separate theories of liability. The jury, however, was not instructed that it must find that BEM and BEI breached separate duties owed to Lewis. As noted above, the instructions that were given left no possibility for finding against one defendant but not the other, nor did they provide for an apportionment between the alleged tortfeasors.  P-1, for example, instructed that: "If you find for the Defendants, then your verdict shall be in the following form: "We the jury find for the Defendants.""

¶10.    Instruction P-14, in enumerating the elements of the negligence action, made the duty of BEM indistinguishable from that of BEI. Erroneously merging the corporations together, it read:

> If you find from a preponderance of the evidence in this case that:
>
> 1. Sarah Lewis was a resident of *Defendants* nursing home;
>
> 2. While a resident of *Defendants* nursing home, Sarah Lewis was suffering from a mental and/or physical condition *requiring care or attention by Defendants*;
>
> 3. *Defendants' should have been reasonably aware of Sarah Lewis' condition;*

5

> 4. *Defendants' failed to provide the care and attention* that Sarah Lewis' condition reasonably required and such failure resulted in injuries to Sarah Lewis; and
>
> 5. *Defendants' failure to provide such care and attention* was the sole proximate cause or a proximate contributing cause of Sarah Lewis' injuries; then your verdict shall be for the Plaintiff."

(Emphasis added).

¶11.   Not only were these instructions factually flawed and misleading, they were legally inaccurate. No proof was presented showing that BEI had any hands-on responsibilities to patients, nor was there evidence of a contract creating a duty flowing from BEI to Lewis. The complaint itself alleged that BEI's duty and alleged breach arose only within the context of the budgeting system.

¶12.   A party is entitled to an instruction regarding a genuine issue of material fact when it is supported by the evidence. *DeLaughter v. Lawrence County Hosp.*, 601 So. 2d 818, 824 (Miss. 1992). The evidence established that BEM and BEI were separate entities, therefore, each corporation should have been judged by the jury according to the evidence and law specifically applicable to each as a putative joint tortfeasor. *See Fielder v. Magnolia Bev. Co.*, 757 So. 2d 925, 932-934 (Miss. 1999) (jury instruction should allow for apportionment of fault between joint tortfeasors); *Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107, 1116-17 (Miss. 2003) (stating that under Mississippi Code Section 85-5-7, trier of fact should allocate fault to each party alleged to be at fault). Instructions segregating the claims of duty, breach, causation, and damages against each Defendant were required but were not given. To compound the error, the allowed instructions failed to distinguish between the two entities and

6

further declined to identify any specific duties owed to Lewis by BEM or BEI. Accordingly, upon remand, all instructions that do not comply with these principles should be refused.

## II. Exclusion of Evidence

¶13.     On January 18, 2002, prior to her admission to Inglewood, Lewis initiated a products liability proceeding against Bayer Corporation. In this lawsuit, she alleged that an ingredient found in Alka Seltzer Plus, a drug manufactured by Bayer, caused the strokes that mandated her placement in the nursing home. In the amended complaint, filed February 6, 2002, the claimed damages included "pain, suffering" and "loss of enjoyment of life." Lewis sought monetary relief for "[a]ssistance in day-to-day care," and for "maintenance and assistance."

¶14.     A second claim was filed against Bayer in August of 2003, apparently as part of a multi-district litigation proceeding. Again Lewis claimed "pain, suffering" and "loss of enjoyment of life" and stated that she would require "assistance in day-to-day care, maintenance and assistance. . . ."

¶15.     These allegations essentially mirror those from the complaint against BEM and BEI, wherein Reed claimed the damages of "pain and suffering. . . and loss of the enjoyment of life." She additionally sought recovery for "past and future medical expenses."

¶16.     During trial, defense counsel attempted to question Reed about these similarities in damages. After several minutes of testimony, however, the trial court prohibited further questioning and excused the jury. When defense counsel argued that Reed was seeking double recovery, the court replied:

> I don't understand that counsel. I don't understand that. If the allegations in this case are based upon neglect, then certainly I'm not going to let this jury consider the pain and suffering that Ms. Lewis experienced as a result of taking

7

Bayer. From your analysis, I would have to allow evidence in regarding what pain and suffering Bayer caused her. From what you're telling the court I need to let all the damages that she's contending in the other lawsuit in this case. . . .

¶17. BEM and BEI contend that this ruling was error, and that they should be given a new trial.

¶18. Our well-established standard for reviewing the trial court's admission or suppression of evidence is abuse of discretion, and the discretion possessed by a trial court in such matters is no doubt great. *Stockstill v. Gammill*, 943 So. 2d 35, 44 (Miss. 2006). For a case to be reversed based upon the erroneous admission or exclusion of evidence, the error must result in prejudice or harm that adversely affects a substantial right of a party. *Windmon v. Marshall*, 926 So. 2d 867, 876 (Miss. 2006) (quoting *Busick v. St. John*, 856 So. 2d 304, 319 (Miss. 2003)).

¶19. Here, the trial court ultimately concluded that the evidence was "improper and inadmissible." We disagree. Evidence is relevant if it "tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Information regarding the Plaintiff's condition prior to the alleged negligence would certainly be relevant in this instance to determine whether or not Lewis had indeed suffered new and distinct injuries at the hands of either BEM or BEI. *See Blake v. Clein*, 903 So. 2d 710, 724 (Miss. 2005) (holding testimony about Plaintiff's mental and physical state before treatment by physician was relevant). Therefore, it obviously was proper for defense counsel to question the similarities of these

damages in order to determine whether or not they were actually caused by a third party, namely Bayer Corporation.

¶20. Counsel for the Plaintiff argued that this questioning was merely an attempt to prejudice Reed by insinuating that she was litigious. M.R.E. 403 addresses this concern with a balancing test to determine whether the probative value of such evidence is outweighed by the risk of undue prejudice. *Palmer v. State*, 939 So. 2d 792, 795 (Miss. 2006).

¶21. In this case, the presumption that allegations of wrongdoing were dissimilar is of no consequence. The Defendants should have been afforded the opportunity to sufficiently examine the Plaintiff's witnesses regarding the alleged damages from the other lawsuit as necessary to present their theories of the case, i.e., that Lewis's preexisting condition, something that was allegedly caused by a third party, was the cause of her deterioration while at Inglewood.

## CONCLUSION

¶22. Protecting vulnerable members of our society is, without question, an issue of utmost importance. In order to safeguard the integrity of our judicial system however, it is a court's task to ensure that all parties receive a fundamentally fair trial. As we cannot in good conscience say that BEM and BEI were afforded such, this case is hereby reversed and remanded for proceedings consistent with this opinion.

¶23. **REVERSED AND REMANDED.**

**WALLER, P.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

9

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶24.  Because the trial below had no error, I must respectfully dissent from the opinion of the majority.

¶25.  The majority sets the stage by issuing the medical opinion that Ms. Lewis was "obviously in poor health at the time of her admittance." The majority does acknowledge that Ms. Lewis' sister "testified that she often found her sister lying in her own waste." Yet the testimony revealed an even worse scenario.  Ms. Reed testified that she had on numerous occasions come to visit her sister at Beverly and had discovered her disabled loved one lying in her own urine and feces.  Often it appeared that she had been lying in her own waste for a lengthy period of time.  Family members testified that they were told Ms. Lewis could be cleaned later, when they were less busy or not on break.  Once Ms. Reed discovered around twenty-three diapers belonging to other patients shoved behind the dresser in her sister's room.

¶26.  Ms. Reed also testified that on four or five separate occasions she discovered her sister with dried vomit around her mouth.  She also testified that Beverly regularly failed to keep Lewis bathed and in the most basic hygienic condition.  Ms. Reed testified that she had informed the staff multiple times about the horrifying state her sister was in; they always promised they were "going to do better."

¶27.  Expert testimony was offered that demonstrated Beverly failed to chart Ms. Lewis' medical condition in violation of state and federal law.  There was also expert testimony that Beverly failed to seek medical attention when Ms. Lewis needed care and that the company callously discontinued physical therapy, even leaving the braces Ms. Lewis needed to walk

10

strewn about on the floor. It was also offered that Beverly had a problem with understaffing, leaving what little care there was to be provided to residents to a handful of staff members.

¶28. As the majority sets out, after only ten months at Beverly Ms. Lewis "had significant contractures in all of her limbs, and had become completely bed-ridden and unresponsive." In other words, her very body had pulled in upon itself.

## I. The Jury Instructions.

¶29. The majority finds that it must reverse and remand because "BEM" and "BEI" were not offered separate jury instructions. This ignores the most important fact, and the threshold question for our analysis: Are these two companies actually separate entities, warranting separate instructions?

¶30. It is undisputed that the same attorneys defended both Beverly entities–both BEI and BEM. They filed joint filings and jointly defended the trial. Beverly's lawyers never requested separate opening statements for the supposedly "separate" companies. Perhaps most critically, attorneys for Beverly never requested a separate series of peremptory strikes or juror challenges for each supposedly "separate" company. Indeed, Beverly's original set of proposed jury instructions repeatedly referred to "the Beverly defendants." Beverly's own instructions did not include the fiction of separating BEI and BEM. It is also noteworthy that originally Beverly did not request an apportionment instruction.

¶31. Nor is there a need for a fiction of separateness. Unlike many such corporate structures developed to place shield after shield in front of assets, BEI and BEM share the same insurer, and the claims concerning the care provided to Ms. Lewis are covered under the same

11

policies. Beverly admitted at trial that the policy limits for each "separate" company were not actually separate from each other; indeed, they were combined.

¶32. In my view the trial court committed no error; in light of the above facts any error would still be harmless. Separate instructions would not change the verdict for the plaintiff, nor prejudice the "two" Beverly defendants, as they shared insurance policies.

## II. The Exclusion of Irrelevant Evidence.

¶33. Prior to her internment at Beverly, Ms. Lewis sued the drug company Bayer, alleging it caused her multiple strokes. It was those strokes that, in part, necessitated her time at Beverly. The trial judge allowed the suit to be brought up on the cross-examination of Ms. Reed, and it was discussed before the jury before defense counsel attempted to bring up the question of damages. Counsel for the plaintiff in this case were not counsel in the other case and asserted they knew little of the case other than its existence.

¶34. The boilerplate assertions included in the two complaints were for "pain and suffering" and "loss of enjoyment of life." On appeal, Beverly argues it should have been able to bring in information about the other case to combat an alleged "double recovery" on behalf of the plaintiff.

¶35. However, the trial court differentiated the two cases, ascertaining correctly that pain and suffering from a stroke is simply different from pain and suffering stemming from nursing home neglect. In my view this is correct; they are simply two different creatures. They do not, as the majority theorizes, "essentially mirror" each other. Indeed, not even defense counsel went to that length, admitting to the trial court that "the specific allegations are not the same," and later conceding again that "the claim in the [Bayer] lawsuit is not neglect."

¶36. Moreover, the trial court recognized the futility of trying another case within a case, refusing to force the attorneys in a nursing home case to differentiate the supposed injuries in a pharmaceutical case (counsel for the plaintiff in this case were not counsel against Bayer and knew little about the case other than its existence). In its ruling on the matter–which occurred some period of time after the language quoted by the majority–the trial court actually agreed to a limited extent with defense counsel:

> [Attorney for Beverly]: . . . That's why the jury is entitled to know [about the other case]. If it's a wrongful death claim, those damages will carry throughout and until the time of her death[,] which would be through the time that she was in [Beverly], which means that the jury is entitled to know that they're claiming that someone caused injury to her during the time that she was in [Beverly].
> BY THE COURT: Well, I agree. The jury will be entitled to know if they're claiming that someone else neglected her, if someone else abused her; the jury would be entitled to know that.
> I'm not going to let you get into this lawsuit–federal court lawsuit any further. It is improper and inadmissable.

I agree with this reasoning. Under our rules, the trial court has great leeway in the admission of evidence and can exclude that which is not relevant. The majority today greatly limits that power.

¶37. The defense was already allowed to bring evidence of the other suit forward, casting doubt upon the damages suffered by Ms. Lewis. Therefore the goal of the defense was actually reached. Yet Beverly wishes even more than this. Indeed, under the majority's method, a plaintiff must not only prove her case, she must prove the negative of all other possible cases, even if they are not yet factually or legally developed.

¶38. On remand, must the plaintiff now bring forth medical experts to testify about the drug Ms. Lewis used, and its alleged harm? Must they disprove every possible theory, no matter

13

how attenuated or irrelevant, about how she may have suffered other harm?  Must they, in essence, try this other case within this case?

¶39.    For the reasons above, I must respectfully dissent.

**GRAVES, J., JOINS THIS OPINION.**