IRVING, P. J., for the Court:
¶ 1. This appeal arises from a negligence action stemming from an automobile accident that occurred between Hope Abney (Hope) and Elizabeth Dunnam in Laurel, Mississippi, on January 28, 2010. As a result of the accident, Darrin Abney (Darrin), a passenger in the car driven by his wife, Hope, filed suit against Hope and Dunnam. Subsequently, Hope filed a cross-claim against Dunnam. On February 8, 2012, a Jasper County jury awarded damages to Hope and Darrin against Dun-nam at the instruction of the circuit court. Feeling aggrieved, Dunnam appeals and argues that the circuit court erred in instructing the jury to find for Hope on the cross-complaint, thereby precluding the jury from apportioning fault.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On January 28, 2010, an automobile driven by Dunnam was traveling west on Jefferson Street in Laurel, Mississippi. In the meantime, an automobile driven by Hope was traveling south on Ellisville Boulevard. Both vehicles approached the intersection of Jefferson Street and Ellisville Boulevard at approximately the same time. However, it is undisputed that Hope had the right-of-way and was not speeding. The weather conditions were reported as clear and dry. Upon reaching the intersection, Dunnam either paused or came to a complete stop at the stop sign that regulated westbound traffic on Jefferson Street, before pulling out into the intersection where she was struck by the automobile driven by Hope and occupied by Darrin. The front center of Hope’s vehicle made impact with the front passenger side of Dunnam’s vehicle.
¶ 4. At trial, Hope, Darrin, and Dunnam were the only ones who testified as to the events of that day. Dunnam testified that *878 she was unfamiliar with the intersection and had only taken that route due to construction issues in Laurel at the time. She asserted that because the road angled and was not straight, she was unable to clearly see cars approaching from her right side. She stated that she came to a complete stop at the stop sign and looked to both her left and her right before proceeding out into the intersection at less than five miles per hour, but did not see Hope’s vehicle until the point of impact. Dunnam admitted that her failure to see Hope’s vehicle was the cause of the accident, as shown in the following colloquy:
Q. All right. Well, let me ask you this. Would you agree with me, Ms. Dun-nam, that your inability or your failure to see Mrs. [Hope] Abney is what caused this accident?
A. Yes, sir.
Q. There’s no dispute about that, is there?
A. No, sir.
Q, And even though you didn’t mean it to happen—
A. Right.
Q. Right.
Q. —what did happen, you caused by not seeing?
A. Right.
Q. And there’s no question in your mind about that, is there?
A. No, sir.
Q. And the jury should have no question about that?
A. No, sir.
Q. That the accident, while it is regrettable, was caused by your failure to see her?
A. Right.
Q. Now, do you know of anything that the driver of the car Mr. Abney— Darrin was riding in could have done to prevent the accident?
A. Unless she had seen me and swerved out of the way or slammed on brakes.
Q. But you don’t contend she was driving too fast?
A. No, sir.
¶ 5. Hope testified that as she came into the intersection, Dunnam’s vehicle stopped but then continued on into the intersection, causing Hope’s vehicle to strike Dunnam’s vehicle. Hope stated that she was traveling “[m]aybe not even [twenty] miles” per hour when she struck Dunnam’s vehicle. She further testified:
Q. And tell the Court and the jury what precautionary sign there is at the intersection of Jefferson Street and Ellisville Boulevard?
A. It was a stop sign on [Dunnam’s] side.
Q. Do you to your own personal knowledge know whether or not she stopped at the stop sign?
A. It was like a pause, but I can’t quite recall.
Q. You just don’t know then?
A. Yes, sir.
Q. All right. And then what happened?
A. The car proceeded out — it happened so fast until it was — it was an accident before we knew it.
Q. There was nothing you could have done to—
A. No, sir.
Q. —avoid the wreck?
A. No, sir.
Darrin testified that as Dunnam entered the intersection, Hope attempted to turn her car to keep from hitting Dunnam’s car.
*879 ¶ 6. At the close of the evidence, Dun-nam submitted the following jury instruction:
If you find by a preponderance of the evidence that the accident in question was caused by the negligenfce] and/or omissions of Elizabeth Dunnam and/or Hope Abney[,] you are instructed to apportion a percentage of fault to the defendant.
The circuit court refused Dunnam’s requested instruction and gave, instead, Hope’s requested peremptory instruction, which stated: “The [c]ourt instructs the jury to find for the Cross-Claimant, Hope Abney, against the Cross-Defendant, Elizabeth Dunnam.” Subsequently, the jury found for Hope and awarded damages to Darrin in the amount of $10,000 and to Hope in the amount of $75,000 on her cross-complaint.
¶ 7. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶8. On appeal, our standard of review for jury instructions is well settled:
[Appellate] [e]ourt[s do] not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Defects in specific instructions do not require reversal “where all instructions taken as a whole fairly — although not perfectly— announce the applicable primary rules of law.” However, if those instructions do not fairly or adequately instruct the jury, [appellate courts] can and will reverse.
Mitchell v. Barnes, 96 So.3d 771, 775 (¶ 9) (Miss.Ct.App.2012) (quoting Burton ex rel. Bradford, v. Barnett, 615 So.2d 580, 583 (Miss.1993)). The Mississippi Supreme Court has stated that “[w]hen analyzing the grant or refusal of a jury instruction, two questions should be asked: Does the instruction contain a correct statement of law and is the instruction warranted by the evidence?” Id. (quoting Beverly Enters. Inc. v. Reed, 961 So.2d 40, 43 (¶ 8) (Miss.2007)).
¶ 9. Dunnam argues that a question of fact remained at the end of the trial concerning liability. She asserts that a reasonable juror could have found that she was not negligent or that Hope was comparatively negligent. Therefore, Dunnam contends that the circuit court erred when it failed to allow the jury to apportion fault. Hope and Darrin contend that, based on uncontradicted testimony, the court properly removed the issue of liability from the jury’s consideration. We agree with Hope and Darrin.
¶ 10. Mississippi Code Annotated section 85-5-7(5) (Rev.2011) provides that “[i]n actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault.... ” Our supreme court has held that “Mississippi is a pure comparative-negligence state.” Wansley v. Brent, 80 So.3d 125, 128 (¶ 12) (Miss.Ct.App.2011). Pursuant to the doctrine of comparative negligence, “negligence is measured in terms of percentage, and any damages allowed shall be diminished in proportion to [the] amount of negligence attributable to the person for whose injury, damage[,] or death recovery is sought.” Melca v. Grant Plumbing & Air Conditioning Co., 67 So.3d 18, 23 (¶ 15) (Miss.Ct.App.2011).
¶ 11. While our state is a pure comparative-negligence state, an instruction allowing a jury to apportion fault between joint tortfeasors is appropriate only if there is some evidence that at least two people were potentially at fault. Here, *880 there is no evidence that Hope, in any way, contributed to the accident. Hope admitted during trial that she saw Dunnam as Dunnam approached the stop sign and entered the intersection. However, Hope also testified that there was nothing that she could have done to avoid the accident. This testimony went unchallenged. In fact, Dunnam admitted that the accident was caused by her failure to see Hope’s vehicle before she entered the intersection. With Dunnam’s admission and her failure or inability to offer any expert testimony challenging Hope’s contention that Hope could not have avoided the accident, there was no factual dispute regarding liability left for the jury to decide.
¶ 12. The dissent contends that Mississippi Code Annotated section 63-3-805 (Rev.2013) governs this case. This section provides:
The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.
The driver of a vehicle shall likewise stop in obedience to a stop sign as required by this chapter at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.
¶ 13. We agree as to the statute’s relevance. However, we part ways with the dissent over the application of the statute to the facts. Apparently, the dissent believes that Dunnam’s testimony that she stopped at the stop sign and looked both to her left and her right before slowly pulling into the intersection is enough to raise a factual issue as to whether Hope also may have been partially at fault. Despite Dun-nam’s uncontradicted testimony that she looked both to her left and her right and did not see Hope’s vehicle in the intersection, other undisputed facts prove, beyond any question, that Hope was approaching the intersection so closely, if not already in it, as to constitute an immediate hazard for Dunnam to pull out into the intersection.
¶ 14. It is undisputed that Hope was not speeding and was traveling “maybe not even [twenty] miles per hour.” Dunnam’s testimony — that at some point north of the intersection in question, Ellisville Boulevard “angled and was not straight” — does not create a triable issue of fact on the question of fault for at least three reasons. First, if Dunnam, from her position, could not see Hope because of the “angled and not-straight” portion of Ellisville Boulevard, then Hope would not have been able to see Dunnam either. Therefore, no fault could be assigned to Hope. Interestingly, however, Dunnam, even after entering the intersection, never saw Hope prior to impact. Second, Dunnam presented no evidence of the distance that the “angled” or “not-straight” portion of Ellisville Boulevard was from the intersection. Without evidence of such distance, the jury would have been left to speculate that the angled portion of Ellisville Boulevard north of the intersection is engineered in a manner that creates an immediate hazard to any motorist approaching the intersection of Ellis-ville Boulevard and Jefferson Street. Third, it appears physically impossible for *881 Hope’s vehicle, traveling at a speed of no more than twenty miles per hour, maybe even less, to have suddenly appeared in the intersection when Dunnam claims that just seconds earlier, it could not be seen by her while she was stopped on the east side of the intersection. The point of impact of the collision — the front passenger side of Dunnam’s vehicle — is strong evidence that Dunnam’s assertion that Hope’s vehicle was not visible when Hope looked to her right is extremely implausible.
¶ 15. Our facts are strikingly similar to the facts in Stribling v. Hauerkamp, 771 So.2d 415 (Miss.Ct.App.2000). The relevant facts in Stribling are as follows:
At approximately 10:30 p.m. on the evening of February 22, 1998, the Hauer-kamp family was traveling south on U.S. Highway 45 in Lowndes County.... Hauerkamp was driving approximately fifty to fifty-five miles per hour. The speed limit on Highway 45 is fifty-five miles per hour. There was no dispute as to the speed of the Hauerkamp vehicle at trial....
Stribling ... was exiting a private driveway that met Highway 45. Stribling came to a stop at the end of the driveway, and after seeing the location of Hauerkamp’s vehicle, decided that he had enough time and distance to make a left turn across the southbound lane of the highway and on to the northbound lane. Stribling testified that when he began to exit the driveway he had a clear line of sight of the Hauerkamp vehicle, and that it was approximately ninety to one hundred feet away. Hauerkamp testified that when he initially saw Stribling’s vehicle exiting the driveway he was approximately ninety feet away. Mrs. Hauerkamp, who was sitting in the passenger side of the vehicle, screamed, “He’s gonna pull out.” Hauerkamp testified that he swerved to the right, then back to the left in an attempt to avoid the collision; however, a collision ensued before Mrs. Hauer-kamp completed her sentence. Hauerkamp collided with Stribling approximately on the centerline of the highway. Stribling testified that at the time of the impact one fourth of his vehicle was still in the southbound lane. Hauerkamp testified that a quarter to half of Stribling’s vehicle was still in the southbound lane at the time of impact. ...
At trial, Stribling made the following statements:
Q. Do you think he was totally responsible for the accident?
[[Image here]]
A. No, sir.
Q. Any way do you say you don’t think he was totally responsible for the accident?
A Because I think that, you know, probably at the time I shouldn’t have, , you know, pulled out. I shouldn’t have pulled out at the time.
Q. Why do you think Mr. — why is it your opinion that Mr. Hauerkamp is partly responsible for this accident? A. Because I felt that he could have avoided me. I felt that I was farther over into the northbound lane to be avoided.
Finding that the facts were not in dispute and Stribling was the sole cause of the accident, the trial judge granted a motion for directed verdict [in favor of Hauerkamp] at the close of the plaintiffs case.
Id. at 415-16 (¶¶ 2-7).
¶ 16. On appeal, this Court, after discussing the facts in some detail, as well as Mississippi Code Annotated sections 63-3-805, -807 (Rev.2013) and the circuit court’s finding, stated:
*882 [Tjhere is no dispute of fact in the case at hand. Stribling not only agrees with Hauerkamp as to the details of the factual scenario of the accident, he admits to being at fault, even though he likewise faults Hauerkamp. Because there is no factual dispute presented, only a legal application remains. Hauerkamp was not traveling at an excessive speed and Stribling had a clear line of sight, as demonstrated by the exhibit Stribling offered into evidence....
Although we are loathe to take a case from a jury, under the stark facts of this case[,j we are left with no other conclusion other than the fact that the trial court was correct in granting the motion for directed verdict in Hauerkamp’s favor.
Stribling, 771 So.2d at 418 (¶¶ 14-15).
¶ 17. The evidence presented by Dun-nam is no stronger than the evidence presented by Stribling in Stribling, where the trial court found, and this Court agreed, “that the evidence [presented] was of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could not possibly differ as to the verdict in favor of Hauerkamp.” Id. at (¶ 14). The same conclusion is justified by the facts here: no reasonable and fair-minded juror in the exercise of impartial judgment could possibly differ as to a verdict in favor of Hope.
¶ 18. Following our holding in Stribling and based on our review of the record, we cannot find that the circuit court erred in refusing Dunnam’s apportionment-of-fault jury instruction, as the uncontested evidence presented at trial demonstrated that it was Dunnam’s negligence that was the sole proximate cause of the accident and of Hope’s and Darrin’s injuries. Accordingly, this issue is without merit.
¶ 19. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., ROBERTS, CARLTON AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., BARNES, AND JAMES, JJ.