965 So.2d 758 (2007)
Alfred SCOTT, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02081-COA.
Court of Appeals of Mississippi.
September 25, 2007.
*759 Johnnie E. Walls, Greenville, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Alfred Scott, Jr. was tried and convicted of murdering Allen Flore. Scott appeals, raising the following issues:

*760 I. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE DUE TO THE STATE'S FAILURE TO MAKE A PRIMA FACIE CASE FOR MURDER.
II. WHETHER THE COURT ERRED BY FAILING TO ADVISE SCOTT OF HIS RIGHT NOT TO TESTIFY.
III. WHETHER SCOTT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
IV. WHETHER THE CUMULATIVE EFFECT OF PERCEIVED ERRORS WARRANTS A REVERSAL OF CONVICTION AND SENTENCE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Alfred Scott, Jr., dated Layuri Washington until the relationship ended in March 2004. While they were a couple, Layuri gave birth to their son. Soon after the birth of their child, the couple broke up and Washington began dating Allen Flore in November 2004. Flore was a senior at West Bolivar High School.
¶ 4. On April 10, 2005, Scott went to Washington's home in Rosedale, Mississippi, to return their child after a visitation. Flore was present in the house when Scott returned the child, but they did not speak to one another. Shortly after, Washington and Flore went to the Double Quick convenience store to purchase snacks and gas. Flore remained outside to pump the gas while Washington went inside the store. Washington then saw Scott enter the store and buy a drink, but she did not speak to him. Washington was talking on her mobile phone when she heard gun shots from outside. When she went outside, she found that Flore had been shot. He died shortly after an ambulance transported him to the hospital.
¶ 5. Scott was charged with Flore's murder on August 29, 2005, and was tried before a Bolivar County jury on October 3, 2005. At trial, the state's pathologist, Dr. Stephen Hayne, testified that Flore died from four bullet wounds to his back and one to his chest. Dr. Hayne stated that the bullet trajectories were consistent with Flore being shot by someone standing over the victim and shooting down into his back.
¶ 6. Eyewitnesses confirm this account. Otis Anderson, Scott's cousin, testified that he and a few friends pulled up at the Double Quick right before the shooting occurred. They were outside the store, across the parking lot discussing motorcycles, when they heard something pop like firecrackers. Anderson looked in the direction of the sound when his friend, Derrick Lewis, stated, "Ronnie Poo's being shot." "Ronnie Poo" was Flore's nickname. Anderson saw Flore on the ground, with Scott standing over him, firing several shots. Lewis and Donnie Barnes also testified that they saw Scott repeatedly shoot Flore in the same manner.
¶ 7. Scott admitted shooting Flore, but argued that it was done in self-defense. He stated that Flore had threatened him before and that he had seen Flore with a gun a month before the night in question. When Scott left the store that night, he saw Flore standing by his car. Flore started an argument. The two exchanged words and Flore said, "I got something for you." Worried that Flore had a gun in his car, Scott shot him. However, Scott testified that he never actually saw a weapon in Flore's possession.
¶ 8. Robert Brown, Scott's cousin, also testified on Scott's behalf. Brown went to high school with Flore and claimed that Flore told him that Scott needed to "leave him alone." Brown did not tell anyone about this conversation when it occurred *761 and did not immediately inform the police about it after Flore's death.
¶ 9. At the conclusion of the State's case, the court denied Scott's motion for a directed verdict. The court then inquired whether Scott would be testifying on his behalf, to which his counsel stated that Scott had "always maintained" that he would testify. The trial judge noted that unless Scott changed his mind, he would not make a Culberson statement concerning Scott's right to testify.
¶ 10. The jury was given instructions for murder, manslaughter, and justifiable self-defense. Scott was convicted of murder on October 6, 2005, and sentenced to life in prison. Scott filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial on October 18, 2005. The court denied the motion. Scott then perfected a timely appeal.

LAW AND ANALYSIS
I. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE DUE TO THE STATE'S FAILURE TO MAKE A PRIMA FACIE CASE FOR MURDER.
¶ 11. Scott first argues the verdict is against the overwhelming weight of the evidence and the evidence was insufficient to sustain the verdict.
A. Sufficiency of the Evidence
¶ 12. In reviewing a denial of a motion for a JNOV, this Court must consider all of the evidence in the light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The credible evidence consistent with Scott's guilt must be accepted as true. Id. If the evidence shows beyond a reasonable doubt that the accused committed the act charged, with every element of that charge being met, then the evidence is sufficient to support a conviction. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005).
¶ 13. The evidence, when viewed in the light most favorable to the State, was sufficient to convict Scott of murder. In Mississippi, murder is the unlawful killing of a human being "with deliberate design to effect the death of the person killed." Miss.Code Ann. § 97-3-19(1)(a) (Rev. 2006).
¶ 14. Flore was shot four times in the back and once in the chest. Three eyewitnesses testified they first heard a "pop" which sounded like fireworks. When they turned toward the direction of the noise, they saw Scott standing over Flore, shooting him repeatedly. The state pathologist's testimony corroborated that the cause of death was multiple gun shots, consistent with shots being fired from above while the victim was on the ground.
¶ 15. Both parties stipulated that two of the bullets that were found in Flore's body during the autopsy came from a Larson .380 automatic pistol. Scott admitted at trial that the gun introduced into evidence was the one he used to shoot Flore. Scott also admitted to shooting Flore, but maintains that it was done purely in self-defense.
¶ 16. Layuri Washington testified that she never heard Flore have cross words with Scott when Scott exercised visitation with their son. She also recounted that several months prior to the night in question, she filed papers with the court after Scott came to Washington's house for the baby and damaged her screen door while trying to get into the house. For a period of time, Scott was not allowed to come to Washington's home to pick up the boy for visitation. However, she and Scott *762 patched things up and Scott resumed visitation with the child without incident.
¶ 17. Scott maintained that during the altercation, Flore told Scott, "I got something for you," and turned towards the car. Scott shot Flore before he could reach the car. Scott asserts that he only shot Flore because he was scared for his life; yet, no weapon was found on either Flore's person or in the car he drove to the convenience store. No other witness could testify to seeing Flore with a weapon, and no other weapon was found at the scene of the crime.
¶ 18. Officer Gerald Wesley of the Bolivar County Sheriff's Department testified that approximately one hour after the shooting, Scott turned himself in to the police. Scott gave a statement in which he said that during the course of an argument, he shot Flore. Yet in that statement, Scott made no claim of seeing Flore with any weapon.
¶ 19. Accepting, as we must, the testimony of the State's witnesses as true and considering all the evidence in the light most favorable to the prosecution's theory of the case, we find there is sufficient evidence to support Scott's conviction. Accordingly, this issue is without merit.
B. Weight of the Evidence
¶ 20. Scott next argues that the jury's verdict is against the overwhelming weight of the evidence. On review of the denial of a motion for a new trial, we view the evidence in the light most favorable to the verdict, and determine whether the evidence so heavily preponderated against the verdict that an unconscionable injustice would result from the denial of a new trial. Bush, 895 So.2d at 844(¶ 18).
¶ 21. The record reflects substantial and corroborated evidence to support the jury's verdict. It is undisputed that Scott killed Flore. Scott admitted to shooting Flore and stated that he did not see Flore with a weapon. Scott testified that he shot Flore before Flore could reach the car, because he thought Flore had a gun in the car. Three eyewitnesses testified that they saw Scott standing over Flore's body, shooting him repeatedly. No one saw Flore with a weapon and no weapon was seen or found in the car. Moreover, the state pathologist confirmed that Flore's wounds were consistent with Flore lying on the ground and being shot from above.
¶ 22. During his testimony, Scott claimed that he saw Flore with a handgun approximately a month before the night in question. He claimed that at the time, Flore told him, "I better get him before he get me." The defense also called Scott's cousin, Robert Brown. Brown also testified that Flore made threats against Scott some time before the shooting, but Brown did not inform the police about the threats either at the time they were allegedly made or when he was first interviewed by the police. Brown could not remember exactly when the threats were made.
¶ 23. Given the evidence presented, the evidence did not so heavily preponderate against the verdict that a new trial is warranted. Accordingly, this issue has no merit.
II. WHETHER THE COURT ERRED BY FAILING TO ADVISE SCOTT OF HIS RIGHT NOT TO TESTIFY.
¶ 24. Scott maintains that he should have been advised of his right not to testify and of the "possible ill effects of his testimony," pursuant to the holding in Culberson v. State, 412 So.2d 1184, 1187 (Miss.1982). Scott's counsel failed to raise this issue with the trial court or in Scott's motion for a new trial. Therefore, this issue is considered waived on appeal and *763 procedurally barred. Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994).
¶ 25. Notwithstanding the procedural bar, this issue is without merit. At trial, the court inquired of Scott's counsel whether Scott would testify. Scott's attorney answered that Scott "has always maintained he wanted to take the witness stand." The court stated that if Scott changed his mind about testifying, then it would address the Culberson warning. The facts in Culberson are readily distinguished from the present case. Culberson addressed the situation in which a defendant complained that, although he was willing to take the witness stand, his attorney would not allow him to testify. Culberson, 412 So.2d at 1186. The court noted that Article 3, Section 26 of the Mississippi Constitution of 1890 gave the accused the right to testify on his behalf, and the denial of that right violated the accused's constitutional rights. Id. In this case, Scott's attorney did not prevent him from testifying. Rather, Scott's attorney informed the court that Scott desired to testify on his own behalf. Thus, there was no need for the trial court to warn or advise Scott of his right to testify independent of his counsel's advice. Moreover, the court is not required to give a defendant the Culberson warning. Shelton v. State, 445 So.2d 844, 847 (Miss. 1984). Accordingly, this argument also lacks merit.
III. WHETHER SCOTT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 26. Scott argues that he was severely prejudiced because his counsel did not insist that the court provide him with the Culberson warning or move to strike a potentially prejudiced juror. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets out the standard for ineffective assistance of counsel claims. In order to prevail on such a claim, the appellant must show that the counsel's performance was not only deficient, but that this deficiency prejudiced the appellant's defense. Id. at 687, 104 S.Ct. 2052. In reviewing such a claim, we look at the totality of the circumstances to determine whether the counsel's performance was so deficient as to deprive the defendant of a fair trial. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990).
¶ 27. As we have already stated, Scott's attorney informed the court that Scott wished to testify. Scott exercised that option. Culberson addressed the situation in which the defendant's attorney allegedly prevented the defendant from taking the stand. Culberson, 412 So.2d at 1186. A court is not required to give a defendant a Culberson warning. Shelton, 445 So.2d at 847. Thus, the lower court need not have given Scott the warning, because he stated his intention to testify on his own behalf and was provided that opportunity. Thus, we find no error with his counsel's representation in this respect.
¶ 28. Scott also alleges counsel was ineffective because a potentially prejudiced juror should have been stricken. At the close of the State's case, the court reviewed a motion outside the presence of the jury that a juror was thought to be a blood relative of the victim's mother. On the record, the trial judge interviewed both Stella Lewis, the juror in question, and Nina Lewis, Flore's mother. Both women testified that they were not related, and both acknowledged that Stella was the secretary for Bolivar High School and Nina was the secretary for the elementary school. Nina said that she was neither a friend of nor associated with Stella. However, Stella said she was "close" to Nina. The transcript of the exchange is as follows:

*764 DIRECT EXAMINATION BY THE COURT:
Q: Ms. Lewis  and I think it's mainly because of your last name. Are you kin to the victim's mother by blood?
A (STELLA LEWIS): No.
Q: Okay. Are y'all close friends of any sort?
A: We work at the West Bolivar School District. Just like I told you yesterday, you know 
Q: Yes, ma'am.
A:  I was close to both of them.
Q: That's right.
BY THE COURT: Any further questions?
BY SCOTT'S ATTORNEY: I don't have any questions.
BY THE COURT: Very good. Are you ready?
¶ 29. The transcript before us is unclear as to whom Stella refers when she states she was close to "both of them." However, Scott argues that Stella was close to Flore's mother and Scott's mother because they all worked for the Bolivar County School System together. Scott did not include the voir dire proceedings in the record given to this Court. Therefore, we are also unable to discern what Stella meant by, "[j]ust like I told you yesterday. . . ."
¶ 30. As we review counsel's performance based on the totality of the circumstances, there is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. McQuarter, 574 So.2d at 687. As such, Scott has the burden to overcome that presumption. Id. Scott has failed to put forth any proof that his counsel's failure to object to this juror was not a strategic move. Also, he has shown no prejudice. Therefore, we are of the opinion that Scott has not met the Strickland test.
IV. WHETHER THE CUMULATIVE EFFECT OF PERCEIVED ERRORS WARRANTS A REVERSAL OF CONVICTION AND SENTENCE.
¶ 31. Scott's final assignment of error is that his conviction and sentence should be reversed due to the cumulative effect of the errors he has identified. It is within this Court's discretion to determine whether errors, found harmless in themselves, "when considered cumulatively require reversal because of the resulting cumulative prejudicial effect." Glasper v. State, 914 So.2d 708, 729(¶ 46) (Miss.2005) (quoting Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss.2003)). As we have found that no error occurred in Scott's trial, there can be no cumulative prejudicial effect. Id. The trial court's judgment is affirmed.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.