PIERCE, Justice,
for the Court:
¶ 1. On January 20, 2011, Jonathan Ha-vard was convicted by a jury in George County Circuit Court for the deliberate-design murder of his girlfriend, Joy Hodges. He was sentenced to life imprisonment. On appeal, Havard requests his conviction and sentence be overturned, or, in the alternative, reversed and remanded for a new trial. Appellate counsel filed a Lindsey[1] brief certifying to this Court there were no appealable issues in the record. Believing otherwise, Havard has filed a brief pro se assigning error to both the trial court and defense counsel. The alleged errors include violations of Ha-vard’s Sixth Amendment right to a speedy trial, his Fifth Amendment right to refrain from testifying, inadequate jury instructions, ineffective assistance of counsel, and failure to grant a change in venue. We disagree and find these allegations of error to be lacking in merit. Therefore, we deny Havard’s requested relief and affirm the decision of the trial court.
FACTS AND PROCEEDINGS
¶2. Defendant Jonathan Havard was convicted of deliberate-design murder and received a life sentence. The following facts are supported by testimony and evidence presented at trial.
¶ 3. On May 28, 2009, George County Deputy Sheriff Bobby Daffin responded to a 911 call. The call was placed by the victim’s aunt, Sandra Williams. Upon arrival at the scene, Officer Daffin saw Ha-vard standing on the porch covered in blood. Daffin testified to asking Havard “what happened” to which Havard responded, “I cut my girlfriend’s throat and I cut my own.” Immediately thereafter, Daffin ordered Havard to the ground and detained him using handcuffs. Shortly *234 thereafter, Daffin was joined by Deputy Mitch Howell.
¶ 4. Once Havard was “detained,” both deputies entered the residence and discovered the victim, Joy Hodges. At trial, Daffin testified to seeing “a large wound [on] the [victim’s] neck ... you could see [her] windpipe.” The officers recovered two knives from the scene — “a wood-handled knife ... [and] a folding Gerber knife that was closed.” DNA from both the victim and defendant was found on the Gerber folding knife. This was consistent with the medical examiner’s testimony, which stated the manner in which Hodges was slain. He concluded she died from approximately five different slice wounds to her throat.
¶ 5. Havard was indicted for the deliberate-design murder of Joy Hodges on December 17, 2009. His original trial date was set for April 19, 2010. Through counsel, Havard sought and received three continuances. On January 18, 2011, the court began voir dire.[2] After questions by the trial judge, prosecutor, and Havard’s defense counsel, twelve members of the jury were empaneled.
¶ 6. Havard’s trial began on January 18, 2011. At trial, the jury heard testimony from the victim’s grandmother, Alice Howell. Howell testified to seeing Havard leave the bedroom with blood on his hands, walk to the kitchen sink, and retrieve a [wood-handled knife] before reentering the bedroom.
¶ 7. The jury also heard testimony from the emergency medical technician (EMT), Candace Colson. Colson asked Havard if he was responsible for his own wounds and the those of the victim. He responded in the affirmative. Along with Colson, the jury heard from an emergency-room nurse, Christy Foster, who treated Ha-vard’s wounds. She testified to hearing Havard say, “I didn’t mean to do it.” Both women were subjected to cross-examination by defense counsel.
¶ 8. Havard was called to the stand by defense counsel. Havard recounted for the jury his version of events, maintaining his innocence throughout. He testified to “waking up with somebody on top of [him], trying to cut [his] throat.” Havard said he was unable to see his face, that it was rather dark outside, and that it looked like this person was wearing a “turkey mask.” After Havard was cross-examined and defense counsel had been given an opportunity for redirect, the defense rested its case.
¶ 9. Next, the State submitted eight different proposed jury instructions; two were withdrawn. Defense counsel offered eleven sets of instructions, with the court refusing six and approving one; four were withdrawn. None contained a request for a limiting instruction regarding the testimony of certain witnesses who were related to the victim. Finally, the jury found Havard guilty by unanimous verdict, and the trial judge sentenced him to life imprisonment. Havard filed notice of appeal to this Court on February 2, 2011.
DISCUSSION
I. Lindsey Brief
¶ 10. When appellate counsel believes there to be no meritorious issues upon which to mount an appeal, the procedure outlined in Lindsey v. State[3] must be followed. Appellate counsel must “file and *235 serve a brief in compliance with Mississippi Rule of Appellate Procedure 28” and certify to the court a diligent review of the procedural and factual history of the criminal action has taken place and that “there are no arguable issues supporting the client’s appeal.”[4] Counsel must specifically examine:
(a) the reason for the arrest and circumstances surrounding the arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.[5]
Counsel must then transmit a copy of the appellant’s brief to the client, inform him or her of the findings, and explain his or her right to file an appellate brief pro se. At this point — once all of the briefs are filed — an appellate court shall evaluate the case on its merits and render its opinion.[6]
¶ 11. This case arrives at this Court via direct appeal. Daniel Hinchcliff, Havard’s appellate counsel, has certified to this Court that he has followed the procedure required of him, and we find no additional briefing is required of him. Havard, however, has elected to submit pro se a brief for this Court’s consideration. Therefore, we will address below the issues he raises.
II. Havard’s Assignments of Error
I. Whether the defendant was entitled, sua sponte, to a limiting or cautionary instruction concerning the potential bias of testimony given by witnesses who were related to the victim even though defense counsel did not object or request a limiting instruction at trial.
¶ 12. Havard takes issue with the testimony of the victim’s grandmother and aunt, and he argues that a limiting or cautionary instruction should have been given by the trial court sua sponte, because their testimony was likely biased. We find, however, that Havard was not entitled, sua sponte, to receive a limiting or cautionary instruction to the jury with regard to the testimony offered by the victim’s family members.
¶ 18. The standard of review for a “a trial judge’s decision to grant or refuse a jury instruction” is abuse of discretion.[7] Generally, this court, will review jury instructions as a whole.[8] And when those instructions, “taken as a whole fairly — although not perfectly — announce the applicable primary rules of law ... no reversible error will be found.”[9] Even though a defendant “has a right to have jury instructions on all material issues presented in the pleadings or evidence,”[10] it remains the burden of trial counsel to raise and request any limiting or cautionary instruction.[11] Failure to do so at trial will result in a procedural bar on appeal.[12]
*236 ¶ 14. Here, both the State and defense counsel submitted jury instructions for the court’s review. Eight different instructions ultimately were approved by the trial court and chosen for submission to the jury. The record is devoid of any attempt by defense counsel to object to those instructions or to request a limiting or cautionary instruction regarding testimony by family members of the victim. Therefore, we find that Havard’s argument is procedurally barred.[13]
¶ 15. Notwithstanding the procedural bar, Havard’s argument on appeal still fails. The record before us illustrates that all testimony at trial was subject to cross-examination by defense counsel, and defense counsel addressed the adverse testimony, including that of the victim’s family, during his closing argument. Then, after the close of evidence, the trial court provided two jury instructions, advising Havard’s jury against undue influence resulting from “bias, sympathy, or prejudice” and the “credibility of [all] witnesses and the weight and worth of their testimony.” On appeal, Havard fails to explain to us why these two general instructions were inadequate in this instance. Accordingly, we And that this issue is without merit.
2. Whether Havard was denied his constitutional and statutory right to a speedy trial.
¶ 16. Both the United States Constitution and the Mississippi Constitution provide that an accused has the right to a speedy trial. The Sixth Amendment to the United States Constitution states, in pertinent part, that “the accused shall enjoy the right to a speedy and public trial.” [14] Article 3, Section 26 of the Mississippi Constitution likewise states, in part, “the accused shall have a -right to ... a speedy and public trial.” [15] In addition, Mississippi Code Section 99-17-1 (Rev. 2007) creates a statutory right to a speedy trial: “Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.”[16]
¶ 17. Havard contends that both his constitutional and statutory rights to a speedy trial were violated. Havard acknowledges that this appeal is the first time this claim has been raised. He contends, however, that since the issue involves a fundamental right, it is “accorded plain error review,” and because his defense was prejudiced by the delay in bringing him to trial, this Court must reverse the trial court’s judgment and order the charge dismissed with prejudice. We cannot provide Havard the relief he seeks.
¶ 18. Havard waived his statutory claim by failing to raise it with the trial court.[17] Waiver notwithstanding, we find no statutory violation in this case.
¶ 19. The total time between arraignment and trial was 357 days. As mentioned, three continuance orders were entered in the case at defense counsel’s request: one on April 15, 2010; one on August 3, 2010; and one on October 7, 2010. The first continued the cause from the original trial date of April 19, 2010, to *237 permit a psychiatric evaluation of Havard; the second continued the cause from August B, 2010, to allow the defense additional time to obtain certain medical information, which could lead the defense to seek aid of certain experts to assist in Havard’s trial; and the third continued the cause from October 25, 2010, to allow the defense more time to prepare for trial, after the defense had filed a motion requesting (and ultimately receiving) funds for a private investigator to assist in the preparation of Havard’s case.
¶ 20. Based on our calculations, the first order tolled the 270-day period prescribed by Section 99-17-1 for 105 days; the second, for another 83 days; and the third, another 85 days, for a total of 278 days. When this total is deducted from the 357 days that elapsed between Ha-vard’s arraignment and the beginning date of his trial, we find that Havard was brought to trial well within the statutory limit.
¶ 21. With regard to Havard’s constitutional speedy-trial claim, the United States Supreme Court has stated that a formal indictment or information or an arrest — which ever occurs first — triggers the constitutional right to a speedy trial.[18] Here, Havard’s arrest on May 28, 2009, triggered the right. In Barker v. Wingo,[19] the United States Supreme Court stated that a balancing test consisting of four factors is to be used in determining the issue. They are as follows: 1) length of delay; 2) reason of delay; 3) defendant’s assertion of his or her rights; and 4) prejudice to the defendant.[20]
¶ 22. Because Havard did not first raise a speedy-trial claim with the trial court, we can decide the issue only if we find that Havard has established a plain-error basis to justify appellate review.[21] Similar to the appellant in Dora v. State, Havard seeks to “leapfrog over the required plain-error analysis by making Barker genre assertions....”[22] Havard merely claims that his defense was prejudiced by the 600 days that elapsed between his arrest and trial, because “witnesses were lost” and his “defense to the charges [was] diminished by the delay,” nothing more. This is not enough. We need more than just broad assertions made “out of the clear blue,” that have no support in the record.[23] Accordingly, we find that Havard has failed to show plain error on appeal, and we hold that his constitutional speedy-trial claim remains proeedurally barred.
3. Whether the trial court erred by failing to advise Havard of his right not to testify at trial.
II23. A defendant’s right against self incrimination is not only sacrosanct, but is commonly known across this land. Even so, Havard asks this Court to reach reversible error when a trial court fails to notify the accused of his right to abstain from testifying prior to taking the stand. Havard asks too much. Where a defendant is represented by competent defense counsel, without evidence to the contrary, reversible error cannot be found.
¶ 24. Both the Fifth Amendment to the *238 United States Constitution[24] and Article 3, Section 26 of the Mississippi Constitution of 1890[25] provide defendants with adequate protections against self-incrimination. Havard argues the trial court has a duty to inform him of these commonly known rights, and failure to do so constitutes reversible error. We disagree.
¶ 25. Prior to trial, Havard was read his Miranda[26] rights three times and indicated by signature he understood those rights. At trial, defense counsel called Havard to the stand to testify on his own behalf. The record is devoid of any warning by the trial judge concerning Havard’s right against self-incrimination. Also absent from the record is any objection by defense counsel to the trial judge not advising Havard of his right not to testify prior to him taking the stand.
¶ 26. This Court consistently has held “that no individual may be compelled to testify against himself or to offer testimony which might render him liable to a criminal prosecution.”[27] However, the Mississippi Constitution also affords defendants the fundamental “right to be heard by himself or counsel, or both....”[28] Like other fundamental rights,[29] “the privilege against self-incrimination may be waived....”[30]
¶ 27. Even so, “it is the duty of the court in proper cases to inform the witness of his privilege, so the witness may decide for himself whether he will claim the privilege.”[31] But where a defendant— like Havard in the present case — is presumably equipped with competent counsel, waives his Miranda rights, and shows no hesitancy to take the stand, it cannot be said a trial court judge must provide more.
If 28. In Scott v. State,[32] the defendant argued he should have received a warning about the “possible ill effects of his testimony.”[33] Scott’s counsel “failed to raise this issue with the trial court or in Scott’s motion for a new trial.”[34] Like Havard, Scott was represented by counsel, waived his Miranda rights by speaking with the police, and willingly took the stand in his own defense.[35] The Mississippi Court of Appeals held'there was no need for the trial court to warn or provide additional advice regarding Scott’s decision to testify independent from Scott’s counsel.[36] Likewise, we find the instant case to be one in which the trial court owed no duty to advise the defendant of the potential “ill *239 effects” of his testimony prior to taking the stand.
¶29. Furthermore, because defense counsel did not raise any objection during the course of the trial, the issue is procedurally barred. Thus, defendant’s request for relief is denied.
4. Whether the trial court erred in failing to issue, sua sponte, a motion for a change of venue.
¶ 30. It is the responsibility of the defendant, not the trial judge, “‘to obtain a ruling from the court on motions [37] A motion for a change of venue must be made in writing and supported by the sworn affidavits of at least two credible individuals.[38] Failure to adhere to the statutory guidelines or make the motion at trial “constitutes a waiver.” [39]
¶ 31. The record is devoid of any motion by Havard to request a change of venue or any affidavits to support his claim. Additionally, there is nothing during voir dire which would give the trial court cause to issue, sua sponte, a motion for change of venue. A change in venue is not automatic.[40] A defendant must show he or she “cannot receive a fair and impartial trial in the county where the offense is charged.”[41] Havard failed to do so.
¶ 32. Moreover, the record indicates the trial judge took steps to ensure that the jurors would harbor no bias. Despite Ha-vard’s claims, the circuit judge did not allow the influence of media, outside publicity, or murmurings to impede the jury’s ability to be impartial. Because the record does not support Havard’s belief that he should have received a change in venue due to pretrial publicity, we find this issue lacking merit. Regardless, because Ha-vard failed to raise the issue at trial, he may not address it here on appeal. Therefore, his request for relief is denied.
5. Whether Havard’s assistance of counsel was ineffective.
¶ 33. This Court reviews appeals asserting ineffective assistance of counsel under the guidelines established by the U.S. Supreme Court in Strickland v. Washington.[42] A successful claim requires a defendant to put forth sufficient evidence which, when viewed under the totality of the circumstances, proves: 1) the defense attorney’s “performance was deficient;”[43] and 2) the deficiency prevented the defendant from receiving a fair trial.[44]
¶ 34. This Court will evaluate the merit of these claims presuming trial counsel to be competent and his or her *240 conduct reasonable.[45] To overcome this presumption, the defendant must “identify the acts or omissions of counsel” and show “the deficient performance prejudiced the defense.”[46]
¶ 35. This Court has addressed the proper procedures for reviewing claims for ineffective assistance of counsel on direct appeal.[47] Generally, “ineffective assistance claims are more appropriately brought during post-conviction[relief] proceedings.”[48] “This is because on direct appeal the Court is limited to the trial court' record in its review of the claim.”[49] Where the record lacks sufficient evidence to adequately address the claim, this Court should deny relief, preserving the defendant’s right to argue the issue through a post-conviction-relief petition.[50]
¶ 36. Here, we find that the record does not contain sufficient evidence for this Court adequately to address Havard’s claims. Therefore, this issue is more appropriate for post-conviction-relief proceedings.
6. Whether the cumulative effect of alleged errors warrants a reversal of Havard’s conviction.
¶ 37. Havard’s final alleged error rests on the cumulative effect of all of his previously asserted errors. This Court previously has held that cumulative effect of errors may warrant reversal in capital cases.[51] However, where “there was no reversible error in any part ... there is no reversible error to the whole.”[52] Therefore, because we are unable to find any reversible error committed to Havard’s detriment during trial, we can not dispense cumulative relief. The judgment and sentence of the Circuit Court of George County are affirmed.
¶ 38. CONVICTION OF DELIBERATE-DESIGN MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, CHANDLER AND KING, JJ. CONCUR. DICKINSON, P.J., AND LAMAR, J., CONCUR IN RESULT ONLY.

. Lindsey v. State, 939 So.2d 743, 748 (Miss.2005) (implementing procedures governing cases where appellate counsel represents an indigent defendant and does not believe the client’s case presents any issues on appeal); see also Easley v. State, 46 So.3d 345 (Miss.2010).

. The transcript at page seven erroneously reads "July 18, 2011.”

. Lindsey, 939 So.2d at 748.

. Id.

. Id.

. Id.

. Flowers v. State, 51 So.3d 911, 912 (Miss.2010).

. Boyd v. State, 47 So.3d 121, 123 (Miss.2010) (citing Utz v. Running and Rolling Trucking, Inc., 32 So.3d 450, 474 (Miss.2010) (citing Bickham v. Grant, 861 So.2d 299, 301 (Miss.2003))).

. Boyd, 47 So.3d at 124.

. Id. at n. 3 (citing Solanki v. Ervin, 21 So.3d 552, 561 (Miss.2009)).

. Brown v. State, 890 So.2d 901, 913 (Miss.2004).

.Boyd v. State, 47 So.3d at 123.

. Boyd, 47 So.3d at 123.

. U.S. Const, amend. VI.

. Miss. Const, art. 3, § 26 (1890).

. Miss.Code Ann. § 99-17-1 (Rev.2007).

.See McBride v. State, 61 So.3d 138, 148 (Miss.2011) (reiterating that "where a defendant fails to raise the statutory right to a speedy trial, he or she waives his or her right to complain about not being tried within 270 days of arraignment”).

. United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. Id. at 530-32, 92 S.Ct. 2182.

. Dora v. State, 986 So.2d 917, 924-26 (Miss.2008).

. Id. at 925.

. State v. Magnusen, 646 So.2d 1275, 1285 (Miss. 1994).

. "No person ... shall be compelled in any criminal case to be a witness against himself....” U.S. Const, amend. VI.

. "In all criminal prosecutions the accused ... shall not be compelled to give evidence against himself....” Miss Const, art. 3, § 26.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Moore v. Moore, 558 So.2d 834, 836 (Miss.1990) (citing Wright v. McAdory, 536 So.2d 897, 903 (Missf.1988)).

. Miss Const, art. 3, § 26.

. See Phillips v. State, 421 So.2d 476, 479-83 (Miss.1982) (the right to confront and cross-examine prosecution’s witnesses); and Thomas v. State, 472 So.2d 425, 426 (Miss.1985) (the right to a jury trial).

. Moore, at 836-37; see also Hutchins v. State, 212 Miss. 145, 54 So.2d 210, 211 (1951).

. Hutchins, 54 So.2d at 211 (emphasis added).

. Scott v. State, 965 So.2d 758, 762-63 (Miss.Ct.App.2007).

. Id. at 762.

. Id.

. Id. at 760-61.

. Id. at 763.

. Byrom v. State, 863 So.2d 836, 851 (Miss.2003) (quoting Evans v. State, 725 So.2d 613, 708 (Miss.1997)); see also URCCC 2.04 (“It is the duty of the movant ... to pursue [a] motion to hearing and decision by the court.”).

. Miss.Code Ann. § 99-15-35 (Rev.2007).

. Byrom, 863 So.2d at 851; see also URCCC Rule 2.04 (“Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion. ...).”

. Byrom, 863 So.2d at 851.

. Id. at 851 (citing Miss.Code Ann. § 99-15-35 (Rev.2000)).

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court adopted the Strickland test in Stringer v. State, 454 So.2d 468, 476 (Miss.1984).

. Sea v. State, 49 So.3d 614, 617 (Miss.2010) (citing Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985)).

. Id.; see also Jackson v. State, 815 So.2d 1196, 1200 (Miss.2002).

. Lindsay v. State, 720 So.2d 182, 184 (Miss.1998) (citing Edwards v. State, 615 So.2d 590, 596 (Miss.1993)); see also Jackson, 815 So.2d at 1200.

. Strickland, 466 U.S. at 690, 104 S.Ct. 2052.

. See Read v. State, 430 So.2d 832, 841-42 (Miss.1983).

. Archer v. State, 986 So.2d 951, 955 (Miss.2008).

. Id.

. Id. (citing Wilcher v. State, 863 So.2d 776, 825 (Miss.2003)).

. Glasper v. State, 914 So.2d 708, 728 (Miss.2005) (citing Hansen v. State, 592 So.2d 114, 142 (Miss.1991)); see also Griffin v. State, 557 So.2d 542, 553 (Miss.1990).

. Glasper, 914 So.2d at 729 (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)).