# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01174-COA

**LONNIE SIMS A/K/A LONNIE EDWARD SIMS, JR. A/K/A "TURK"**                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2008 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES LONNIE SIMS (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED, AND FIVE YEARS OF POSTRELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED - 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON, FAIR AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     On November 17, 2006, Lonnie Sims was indicted for armed robbery in violation of

Mississippi Code Annotated section 97-3-79 (Rev. 2014).  Following a trial on March 5-6,

2008, a Forrest County jury found Sims guilty of armed robbery.  The trial court sentenced

Sims to thirty years in the custody of the Mississippi Department of Corrections (MDOC),

with five years suspended, and five years of postrelease supervision. Sims appeals from his conviction. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Tyler Lefan testified that he was robbed at gunpoint in the parking lot of a Minit Mart in Hattiesburg, Mississippi, on June 23, 2006, by Sims and Sims's cousin, Jeremy Walker. Earlier that day, Lefan left work to cash his and his girlfriend's paychecks. After cashing the checks, Lefan stopped at the Minit Mart on Hardy Street on his way back to work. Two men, who were standing outside the Minit Mart, offered to sell Lefan marijuana as he was on his way inside. Lefan did not know the two men, who were later identified as Sims and Walker. Lefan declined their offer and proceeded into the Minit Mart.

¶3.     Lefan purchased a drink and a pack of cigarettes. As Lefan was walking back to his car, Sims and Walker approached him again. Sims and Walker asked Lefan if he would give them a ride to Wendy's located about a block away. Because Lefan did not know the two men and was eager to return to work, he told them that he could not give them a ride.

¶4.     Lefan unlocked his vehicle and got into the driver's seat. As Lefan was putting in a CD, Sims and Walker jumped into his vehicle and demanded that he bring them to Wendy's. Lefan told them again that he would not give them a ride. Sims, who was in the back seat, pulled out a chrome .45 millimeter pistol and pressed it against Lefan's head. Walker, who was sitting in the front passenger seat, emptied Lefan's pockets while Sims pointed the pistol at Lefan. Walker took $700 cash, Lefan and his girlfriend's driver's licenses, and bank deposit slips from Lefan's pockets. After robbing Lefan, Sims and Walker ran toward a

2

creek in a wooded area behind the Minit Mart. Lefan went inside the Minit Mart and told the cashier that he had been robbed and to call the police.

¶5. Officer Zach Robinson of the Hattiesburg Police Department was on patrol nearby and received a call about the armed robbery. Officer Robinson responded and spotted two individuals matching the descriptions of the two armed-robbery suspects running along the creek behind the Minit Mart. Officer John Stringer, who was also on patrol, received a call about the two suspects being spotted. Officer Stringer responded and pursued the two suspects on foot.

¶6. Officer Stringer found Sims about a block from the Minit Mart in the woods lying face down attempting to hide. Officer Stringer arrested Sims and searched him. During the search, Officer Stringer discovered $145 in cash and wax that had been cut and packaged to look like crack cocaine. Police advised Sims of his *Miranda*[1] rights. Officer Stringer transported Sims to the police department for questioning by investigators.

¶7. Sometime after turning Sims over to investigators, Officer Stringer was called back to transport Sims to the county jail to be booked on charges of armed robbery and possession of a counterfeit controlled substance with intent to distribute. Officer Stringer testified that he did not ask Sims any questions or solicit any information from him while transporting him to the county jail. Officer Stringer testified that Sims was upset about going to jail and gave him the impression that his chief concern was related to the charge of possession of the counterfeit controlled substance with intent to distribute. During the transport, Sims made

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

a voluntary, unsolicited statement to Officer Stringer that the $145 cash had not been acquired from selling drugs, but that the cash was from the armed robbery.

¶8.     Lefan went to the police department and gave a written statement describing the robbery.  Lefan also identified Sims in a photo lineup as the individual who had pressed the pistol to his head.  However, Lefan could not identify Walker in a photo lineup.  On June 28, 2006, a nearby homeowner discovered the pistol that was used in the armed robbery wrapped in a t-shirt in his shed, which was located about a block away from the Minit Mart.  A fingerprint taken from the pistol matched Walker's fingerprint.

¶9.     Sims took the stand in his defense.  Sims denied having any involvement in the armed robbery.  He admitted to being with Walker at the Minit Mart.  He also admitted he got into Lefan's car for the purpose of what was supposed to be a drug deal.  However, Sims testified that as money was being exchanged, "a commotion [took] place."  Sims testified that "Walker sort of attack[ed] the victim and kind of grab[bed] him by his shirt and snatch[ed] the money out of his hand."  Sims testified that he got out of the car and ran because he was scared.  Sims also testified that he did not see or handle a gun at any point during the encounter with Lefan.  Following a trial, the jury returned a guilty verdict against Sims for armed robbery.  Sentencing was deferred to April 18, 2008, pending the trial court obtaining a presentence report.

¶10.    Prior to the trial court's imposing its sentence at the hearing, Sims's trial attorney informed the trial court that Sims wished to have him dismissed as his counsel.  Sims told the trial court that he "already ha[d] another attorney."  However, Sims could not identify his

4

new supposed attorney, who was not present at the hearing. When asked who his new attorney was, Sims responded: "I don't exactly know his name right now." Sims's trial attorney stated that he had prepared a motion for a new trial, and had planned on going over it with Sims after sentencing. The trial court proceeded with sentencing. Sims was sentenced to thirty years in the custody of the MDOC, with five years suspended, and five years of postrelease supervision.

¶11. After the trial court announced the sentence, Sims's trial attorney asked to be excused from the matter. The trial court responded: "As soon as [another attorney] enters an appearance in this matter[.]" On April 29, 2008, Sims's trial attorney filed a motion for a new trial. Sims's trial attorney argued that Sims was entitled to a new trial because he was denied his constitutional right to a fair and impartial jury due to racial discrimination and the verdict was against the overwhelming weight of the evidence. On June 11, 2008, the trial court entered a final judgment of conviction and sentence.

¶12. On December 23, 2013, Sims filed a pro se application for the Mississippi Supreme Court's leave to file a motion for postconviction relief (PCR). *Sims v. State*, 2013-M-02135. On February 6, 2014, the supreme court dismissed Sims's application without prejudice because he had never filed a direct appeal of his conviction.

¶13. On May 23, 2014, Sims filed a pro se motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV). Sims argued that his constitutional due-process rights were violated; he received ineffective assistance of counsel; there was newly discovered evidence; the prosecution failed to produce Walker as a witness; there was

5

insufficient evidence supporting the verdict; and the verdict was contrary to the overwhelming weight of the evidence.

¶14.    On August 8, 2014, the trial court entered an order denying Sims's motion for a new trial or, in the alternative, a JNOV.  Because the trial court did not specify that the order only pertained to Sims's pro se motion filed on May 23, 2014, we construe the order as denying both Sims's pro se motion filed on May 23, 2014, and Sims's motion for a new trial filed by his trial attorney on April 29, 2008.  On August 22, 2014, Sims filed a notice of appeal in compliance with Mississippi Rule of Appellate Procedure 4(e).[2]  The trial court allowed Sims to proceed in forma pauperis.  On May 21, 2015, this Court granted Sims's motion to appoint appellate counsel.

¶15.    Sims's appointed appellate counsel filed a brief on his behalf raising one assignment of error, which is whether the verdict was contrary to the overwhelming weight of the evidence.  Sims filed a pro se supplemental brief to be considered along with his appellate counsel's brief.  Sims raises four additional assignments of error in his pro se supplemental brief, which are: Lefan's testimony was "duplicitous" and "impermissibly suggestive"; Sims was denied his constitutional right to a fair and impartial jury; he received ineffective

_____

[2] Rule 4(e) provides in part: "If a defendant makes a timely motion under the Uniform Rules of Circuit and County Court Practice (1) for judgment of acquittal notwithstanding the verdict of the jury, or (2) for a new trial under Rule 10.05, the time for appeal for all parties shall run from the entry of the order denying such motion."  Before the judgment of conviction and sentence was entered on June 11, 2008, Sims's trial attorney had filed a motion for a new trial on April 29, 2008.  Because the jury returned its guilty verdict on March 6, 2008, and Sims was verbally sentenced on April 18, 2008, we consider this motion to be timely under Uniform Circuit and County Court Rule 10.05.  The time for appeal began to run when the trial court entered its order denying Sims's motion for a new trial or, in the alternative, a JNOV on August 8, 2014.

6

assistance of counsel; and there is newly discovered evidence requiring a reversal of his conviction. Finding no error, we affirm.

## DISCUSSION

### I. Weight of the Evidence

¶16. Sims argues that the verdict was contrary to the overwhelming weight of the evidence. Sims contends that the verdict was unsupported by credible evidence because the Minit Mart cashier testified that fifteen to twenty minutes had elapsed between Lefan making his purchase and returning inside the store to tell the cashier that he had been robbed. Sims claims that this testimony corroborates his testimony that his and Walker's encounter with Lefan was supposed to be a drug deal but went wrong. Sims argues that his testimony was also corroborated by his fingerprints not found on the pistol. Sims also argues that Officer Stringer's testimony about Sims's unsolicited statement regarding the source of the $145 during his transport to the county jail was "dubious at best."

¶17. "When reviewing challenges to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Vaughn v. State*, 926 So. 2d 269, 271 (¶4) (Miss. Ct. App. 2006) (quoting *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005)). "The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844 (¶18) (quoting *Amiker v. Drugs for Less Inc.*, 796 So. 2d 942, 947 (¶18) (Miss. 2000)).

¶18. Lefan unequivocally identified Sims in a photo lineup and at trial as the individual

7

who pressed a pistol to his head while Walker emptied his pockets. Officer Stringer testified that Sims made an unsolicited, voluntary statement during the transport to the county jail that the $145 cash had come from the armed robbery and not from selling drugs. "Conflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Brown v. State*, 995 So. 2d 698, 702 (¶13) (Miss. 2008) (citing *Nicholson v. State*, 523 So. 2d 68, 71 (Miss. 1998)).

¶19. The jury properly resolved the conflicting testimony and found Sims guilty of armed robbery. Viewing the evidence presented at trial in the light most favorable to the verdict, we find that Sims's guilty verdict was not against the overwhelming weight of the evidence.

## II. Lefan's Testimony

¶20. Sims argues that the Lefan's testimony was "duplicitous" and "impermissibly suggestive." Sims argues that Lefan's testimony was "duplicitous" because he claims that Lefan lied about not having been previously convicted of a felony. Sims does not explain how Lefan's testimony was "impermissibly suggestive."

¶21. As for Lefan's testimony being "duplicitous," it is well settled that "[i]ssues regarding the weight and credibility of the evidence are for the jury to resolve." *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995). On cross-examination, Lefan testified that he had never been convicted of a felony. There is no support in the record to suggest otherwise as Sims asserts in his brief. This argument is without merit.

¶22. Sims fails to provide any support for his bare assertion that Lefan's testimony was

8

"impermissibly suggestive." Presumably, Sims is challenging Lefan's photo lineup identification.

¶23. "For an identification (made out of court or in court) to be excluded, it must be the result of an impermissibly suggestive lineup and the identification must be unreliable. *Butler v. State*, 102 So. 3d 260, 264 (¶8) (Miss. 2012) (citing *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982)). "A lineup or series of photographs is impermissibly suggestive if the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer." *Id.* at (¶9). There is nothing in the record supporting the argument that Sims was conspicuously singled out in some manner from the others in the photo lineup, either from appearance or statements by an officer. This argument is also without merit.

¶24. Sims also claims in his brief that the State knew Lefan had lied on the witness stand, and withheld exculpatory information, namely Lefan's alleged prior felony conviction. This claim is also unsupported by the record and without merit.

### III. Fair and Impartial Jury

¶25. Sims argues that he was denied a fair and impartial jury because the State exercised four of its peremptory strikes in a racially discriminatory manner to exclude African Americans from the jury in violation of *Batson v. Kentucky,* 476 U.S. 79, 96 (1986) (holding it unconstitutional for either party to strike potential jurors for racially biased purposes). Sims argues that the trial court erred by accepting the State's proffered race-neutral reasons for exercising its peremptory strikes.

¶26.    The Mississippi Supreme Court has provided a three-step inquiry for courts to follow when analyzing a claim of racial discrimination in jury selection under the guidelines of *Batson*:

> First, the party objecting to the peremptory strike of a potential juror must make a prima facie showing that race was the criterion for the strike. Second, upon such a showing, the burden shifts to the State to articulate a race-neutral reason for excluding that particular juror. Finally, after a race-neutral explanation has been offered by the prosecution, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination.

*Pitchford v. State*, 45 So. 3d 216, 224 (¶14) (Miss. 2010) (citation omitted).

¶27.    "On appellate review, a trial court's determinations under *Batson* are accorded great deference because they are largely based on credibility." *Berry v. State*, 802 So. 2d 1033, 1037 (¶9) (Miss. 2001). "A [trial] court's ruling on a *Batson* challenge will not be overturned unless the record indicates the ruling was clearly erroneous or against the overwhelming weight of the evidence." *Cannon v. State*, 141 So. 3d 442, 444 (¶9) (Miss. Ct. App. 2013) (citing *States v. State*, 88 So. 3d 749, 754 (¶18) (Miss. 2012)).

¶28.    At trial, Sims made a *Batson* motion arguing that the State had used its peremptory challenges in a racially discriminatory manner by striking four African American jurors, specifically jurors 3, 15, 27, and 31.  The prosecutor then provided a race-neutral reason for each peremptory strike that he had exercised on the four African American jurors.

¶29.    The prosecutor stated that he struck juror 3 because she made absolutely no eye contact and was nonresponsive.  The prosecutor also stated that juror 3 would not look at him when he addressed her.  The prosecutor stated that he struck juror 15 because she was

employed as a manager and cashier at a nearby Minit Mart in the same area where Sims was residing. The prosecutor stated that he struck juror 27 because she indicated that she was hard of hearing. The prosecutor stated that he struck juror 31 because she did not complete her juror information card, and was nonresponsive to his questions while entirely responsive to the defense counsel's questions. The prosecutor also described juror 31 as behaving overly friendly to the defense and as being agreeable to everything the defense counsel had said.

¶30. The trial court accepted the prosecutor's reasons for striking each of the four African American jurors as being race-neutral. We find that the trial court did not abuse its discretion in accepting the State's race-neutral reasons for striking the potential jurors. Accordingly, Sims was not denied his constitutional right to a fair and impartial jury.

### IV. Ineffective Assistance of Counsel

¶31. Sims argues that he received ineffective assistance of counsel at trial. Sims argues his trial counsel was ineffective because he "failed to have the prosecution witnesses investigated (as to who[] they really were) as to their background, etc[.] [a]s [Lefan] lied about having never been convicted of a felony, etc." Sims also argues that his trial counsel was ineffective because he did not object to Officer Stringer's testimony regarding Sims's statement that he had obtained the $145 not from selling drugs, but instead, from the robbery.

¶32. "Generally, ineffective assistance claims are more appropriately brought during [PCR] proceedings." *Havard v. State*, 94 So. 3d 229, 240 (¶35) (Miss. 2012) (citing *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008)). "[W]here the record cannot support an ineffective

11

assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a [PCR motion]." *Brandon v. State*, 109 So. 3d 128, 134 (¶23) (Miss. Ct. App. 2013) (citing *Aguilar v. State*, 847 So. 2d 871 (¶17) (Miss. Ct. App. 2002)).

¶33. Sims's ineffective-assistance claims involve questions of trial counsel's alleged inaction and would require information outside the record. We find that this issue cannot be fully addressed on direct appeal, and would be more appropriately raised in postconviction (PCR) proceedings. *See Neal v. State*, 15 So. 3d 388, 405-06 (¶42) (Miss. 2009) (holding that an ineffective-assistance-of-counsel claim would be more appropriately raised in PCR proceedings because it involved questions of inaction by trial counsel, which required information outside the record). We deny relief on this assignment of error without prejudice so that Sims, if he desires to do so, may raise his claim in a PCR motion.[3]

### V. Newly Discovered Evidence

¶34. Sims argues that he has newly discovered evidence requiring a reversal of his conviction. Specifically, Sims relies on a purported affidavit signed by Jeremy Walker, dated May 2, 2011. The one-page affidavit essentially mirrors Sims's testimony at trial.

¶35. A defendant seeking a new trial based on newly discovered evidence must make four showings: (1) the new evidence was discovered after the trial; (2) it could not by due

---

[3] "Under the Mississippi Uniform Post-Conviction Collateral Relief Act . . . , a PCR motion must be filed within three years after the petitioner's direct appeal is ruled upon by [the Mississippi Supreme] Court or, where a petitioner has pleaded guilty, [it] must be filed within three years after entry of the judgment of conviction." *Jones v. State*, 119 So. 3d 323, 325 (¶6) (Miss. 2013) (citing Miss. Code Ann. § 99-39-5(2) (Supp. 2012)).

diligence have been discovered prior to trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) it will probably produce a different result or verdict in the new trial. *Johnson v. State*, 110 So. 3d 353, 354-55 (¶5) (Miss. Ct. App. 2013) (citations omitted). "Relief must be denied if the [defendant] fails to meet any one of these four elements." *Id.* at 355 (¶5).

¶36. Sims fails to show how by due diligence this affidavit could not have been discovered prior to trial. Also, the affidavit merely echoes Sims's testimony at trial and would have been used for impeachment purposes, at best. We also cannot say that the affidavit would probably produce a different result or verdict in a new trial. This assignment of error is without merit.

¶37. **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED, AND FIVE YEARS OF POSTRELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**

13