PIERCE, Justice,
for the Court:
¶ 1. This case comes before the Court on appeal from the Lowndes County Circuit Court. The jury convicted James Earl Boyd of aggravated assault pursuant to Mississippi Code Section 97-3-7, and the trial court sentenced Boyd to a term of twenty years. Boyd filed this timely appeal, and argues that the trial court erred in failing to instruct the jury that, in an aggravated-assault prosecution it must find that the instrument used by the defendant was a deadly weapon. Because it is well-established that failure to raise an issue at trial proeedurally bars review on appeal, we affirm Boyd’s conviction and sentence.
FACTS
¶ 2. On approximately March 29, 2008, Boyd had someone drop him off at Wanda Sherrod’s mother’s house. Sherrod, her mother, grandson, and nephew were all sitting on the front porch of the home. Boyd took a seat next to Sherrod’s mother and exchanged pleasantries. Boyd then moved to a seat that was closer to Sherrod and her grandson. As Sherrod got up to get her grandson some juice, Boyd said “Hold up Wanda, I got something for you.” He then produced a knife and cut Sherrod several times. Sherrod’s screams alarmed a neighbor, who noticed Boyd stabbing Sherrod. The neighbor ran inside her home and notified her husband. Upon coming outside, the husband saw Boyd stabbing Sherrod. He yelled at Boyd to stop and then pushed Boyd, causing Boyd to drop the knife. The husband kicked the knife away from Boyd, after which Boyd got up and calmly walked away. The neighbors called 911.
¶ 3. Officer Scott Glascow spotted Boyd walking a few blocks from the scene of the crime. Officer Glascow noticed Boyd had blood on his pants and that he was bleeding from his hands. Boyd told the officer, “I was defending myself. They were getting my money.” Boyd cooperated with all of the officer’s instructions and subsequently was arrested.
¶ 4. Boyd was indicted on one count of aggravated assault for the stabbing of Wanda Sherrod. Prior to trial and in response to Boyd’s motion, the trial court ordered Boyd to undergo a mental examination by the Mississippi State Hospital at Whitfield, Mississippi.[1] The examination showed that, while he appeared to have a history of mental illness, Boyd was able to understand the nature of his alleged ac *123 tions and the difference between right and wrong in relation to his alleged actions. The test further demonstrated that Boyd had a reasonable degree of rational understanding regarding the nature of legal proceedings against him. Additionally, the clinical psychologist noted that Boyd’s score on the Miller-Forensic Assessment of Symptoms Test (M-FAST), designed to assess exaggeration of psychological problems, reflected exaggeration of psychotic symptoms and malingering.[2] The results of Boyd’s mental examination were made part of the record in this appeal.
¶ 5. At trial, Boyd interrupted his attorney and the voir dire proceedings by taking his pants off and throwing them at the trial judge. The trial court had the jurors removed. Boyd’s attorney moved for a mistrial, which the trial court denied. Again, the trial court made an on-the-record statement regarding Boyd’s actions and concluded that Boyd was intentionally acting out in order to convince the jury that he was mentally ill.[3] Upon their return, the trial court addressed the jurors regarding Boyd’s actions, and all jurors indicated that they could be fair despite Boyd’s conduct.
¶ 6. The State produced three witnesses at trial, other than the Sherrod, who had seen Boyd repeatedly stab Sherrod with a knife. The knife Boyd allegedly had used to stab and cut Sherrod was admitted into evidence. Detective Travis Robertson, the investigating officer, testified that the knife Boyd had used to stab and cut Sher-rod was a “kitchen knife” and that it did not have a blade guard, which had resulted in cuts to Boyd’s right hand. The evidence further showed that the knife had a serrated edge.
¶7. Additionally, the State introduced testimony from Dr. Thomas Vincent, the treating general surgeon, who testified that he had repaired sixteen wounds located mostly on Sherrod’s face, neck and arms. Dr. Vincent’s testimony revealed that several of Sherrod’s wounds were substantial and measured more than four inches in length. Dr. Vincent further stated that if the wounds on Sherrod’s neck had been a few centimeters deeper, Boyd would have severed Sherrod’s carotid artery.
¶ 8. After a two-day trial, the jury returned a verdict of “guilty.” Upon receiving the pre-sentence investigation report, the trial court sentenced Boyd to a term of twenty years. Boyd filed this timely appeal.
DISCUSSION
¶ 9. Boyd claims for the first time on appeal that the trial court erred in failing to instruct the jury that, in an aggravated-assault prosecution, it must find that the instrument used by the defendant was a deadly weapon. At trial, Boyd did not object to the state’s instruction concerning the elements of aggravated assault. The State argues that because Boyd failed to object at trial, the issue was not preserved for appeal.
¶ 10. It is well-established that failure to raise an issue at trial procedural *124 ly bars review on appeal.[4] “To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue.”[5] Boyd failed to object to the State’s instruction regarding the elements of aggravated assault at trial, nor did he raise the issue in his motion for judgment notwithstanding the verdict. Thus, Boyd is procedurally barred from raising this issue for the first time on appeal.
¶ 11. Notwithstanding the procedural bar, this issue is without merit. Generally, “[jury] instructions are to be read as a whole.”[6] “When analyzing jury instructions as a whole, ‘defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly — although not perfectly — announce the applicable primary rules of law.’ ”[7] “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”[8]
¶ 12. In the instant case, the State— without opposition from Boyd — offered instruction S-2, which provided the following:
The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that on or about March 29, 2008, James Earl Boyd, did unlawfully, willfully, feloniously, purposely, and knowingly cause bodily injury to Wanda Sherrod with a knife, without authority of law and not in necessary self-defense, then you shall find the defendant guilty as charged.
If the State fails to prove any one or more of the above elements beyond a reasonable doubt, then you should find the defendant not guilty.[9]
The statute under which Boyd was convicted states, in pertinent part:
(2) A person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
Miss.Code Ann. § 97-3-7 (Rev.2006).
¶ 13. As the statute reveals, the phrase “with a deadly weapon or other means likely to produce death or serious bodily harm” is an essential element of the statute. And although no rule or precedent requires that an instruction mirror *125 the exact language of a criminal statute, we have held that “the jury must be correctly and fully instructed regarding each element of the offense charged.”[10] The “purpose of jury instructions is to tell the jury what facts they have to find and who has the burden of proving or disproving those facts.” [11]
¶ 14. The jury instruction at issue, S-2, did not properly instruct the jury that, in order to convict Boyd of aggravated assault, it must find: (1) that the knife with which Boyd had injured Sherrod is a “deadly weapon,” or (2) that Boyd had caused Sherrod’s injuries by “other means” likely to produce death or serious bodily injury.[12] But we find, as we have before, that no fair-minded and properly instructed jury could fail to find that Boyd’s knife was a deadly weapon,[13] and that Boyd’s cutting and stabbing Sherrod multiple times was likely to produce serious bodily injury.[14] In light of the overwhelming evidence that the knife Boyd used to stab Sherrod was a deadly weapon, we may safely conclude that the same result would have been reached had the State included the phrase “a deadly weapon” in the elements instruction.[15] Accordingly, this assignment of error is without merit.
CONCLUSION
¶ 15. For the reasons stated, we affirm the trial court.
¶ 16. CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND CHANDLER, J.

. Under the facts presented in the record, Uniform Circuit and County Court Rule 9.06 was satisfied to the extent the rule requires a hearing, after a mental examination has been ordered, to determine if the defendant is competent to stand trial. Prior to the start of trial, the trial court held a hearing and addressed the results of Boyd's mental examination. Judge Kitchens found Boyd competent and made an on-the-record determination regarding Boyd’s mental state: "I find no indication that you’re [Boyd] mentally ill to the extent that you didn’t understand right from wrong in this report.”

. Boyd scored an 18 on the M-FAST. Scores of 6 or more are considered to reflect exaggeration and malingering.

. After Boyd’s disruptive conduct, the trial court again stated on the record:
I think it is a well orchestrated plan by Mr. Boyd. I have been able to discuss with Mr. Boyd. He’s given answers that were — that shows that he’s properly oriented. They were responsive to the questions, and he’s been able to phrase questions in a well [sic] in responsive to the Court that indicated to this Court that he understands what's going on.

. Walker v. State, 913 So.2d 198, 217 (Miss.2005).

. Harris v. State, 861 So.2d 1003, 1013 (Miss.2003) (citing Crawford v. State, 787 So.2d 1236, 1244-45 (Miss.2001)); see also Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983) ("Because appellant failed to object to this instruction at trial, such has not been properly preserved for appellate review.”).

. Utz v. Running and Rolling Trucking, Inc., 32 So.3d 450, 474 (Miss.2010) (citing Bickham v. Grant, 861 So.2d 299, 301 (Miss.2003)).

. Id. (quoting Beverly Enter. v. Reed, 961 So.2d 40, 43 (Miss.2007)).

. Harris v. State, 861 So.2d 1003, 1014 (Miss.2003) (citing Montana v. State, 822 So.2d 954, 957 (Miss.2002)).

. Additionally, the language in the indictment provided, in pertinent part:
[T]hat James Earl Boyd late of the County aforesaid, on or about the 29th day of March, 2008, in the County and State aforesaid, did unlawfully, willfully, and felo-niously, purposely and knowingly cause bodily injury to Wanda Sherrod, a human being, with a deadly weapon, to wit: a knife, without authority of law and not in necessary self defense, in violation of MCA § 97-3-7; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.

. Hunter v. State, 684 So.2d 625, 636 (Miss.1996) (citing Neal v. State, 451 So.2d 743, 757 (Miss.1984)).

. Neal v. State, 15 So.3d 388, 397 (Miss.2009) (citing Harris v. State, 861 So.2d 1003, 1016 (Miss.2003)).

. Miss.Code Ann. § 97-3-7(2)(b) (Rev.2006).

. Again, the knife used by Boyd was admitted into evidence, along with a picture of the knife as it was found by Detective Robertson. The appellate record contains the picture of the knife and shows that the knife had a serrated edge and no blade guard. It is clear from the evidence that the knife Boyd used to injure Sherrod was a deadly weapon.

. See Hutchinson v. State, 594 So.2d 17, 19-20 (Miss.1992) (Court determined that the knife used by Hutchinson was a deadly weapon, and stated ”[W]e have held in assault cases whether the instrumentality of attack is a deadly weapon within the statute is a question for the jury, (citations omitted), but this rule is in part a function of the fact that there is no such thing as a directed verdict for the prosecution in a criminal case.” Fairchild v. State, 459 So.2d 793, 800-01 (Miss.1984)).

.See Lancaster v. State, 200 So. 721, 722 (Miss.1941) and Kolberg v. State, 829 So.2d 29, 48 (Miss.2002) (citing Conley v. State, 790 So.2d 773, 793 (Miss.2001)) (Where the Court noted that an "[Ejrror is harmless if it is clear beyond a reasonable doubt that it did not contribute to the verdict.”).