IRVING, P.J., for the Court:
¶ 1. On September 21, 2011, a jury convicted Joseph Robert Reith of murder. The Madison County Circuit Court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. Feeling aggrieved, Reith appeals and argues that: (1) the circuit court erroneously gave jury instruction S-5; (2) the circuit court improperly limited his theory of the case; (B) there is insufficient evidence to support the jury’s verdict; and (4) he received ineffective assistance of counsel.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. Reith and his wife, Tammy, divorced in 2007. The couple shared custody of their only child, Dylan. Following the divorce, Tammy voiced her intent to move to Alaska and to take Dylan with her. On March 12, 2010, Reith petitioned the chancery court for a temporary restraining order and a permanent injunction to prevent Tammy from removing Dylan from the state.
¶ 4. On March 23, 2010, Tammy allegedly went to Reith’s apartment to visit with Dylan. However, Dylan was not home. While inside the apartment, Reith and Tammy began to argue about Tammy threatening to take Dylan to Alaska. Reith later killed Tammy as she attempted to leave his apartment. Reith admitted that he killed Tammy but insisted that he “blacked out” before killing her.
¶5. Officer Howard Young, with the Canton Police Department, testified that he went to Reith’s apartment on the day of the incident in response to a call from dispatch that there was a possible domestic-violence situation. When Officer Young arrived at Reith’s apartment, he knocked twice but received no answer. Officer Young entered the apartment and noticed Reith on his cellular phone. He approached Reith and asked if anything was going on. Reith responded by saying, ‘What have I done? What have I done? Is she dead?” Reith pointed to Tammy’s body lying on the floor. Officer Young testified that he had not seen Tammy’s body until Reith pointed toward her. He immediately took Reith’s cellular phone from him and took him into custody. Officer Young noted that Tammy was “pretty badly beaten up,” had a knife through her neck, and was covered slightly with a blanket. Officer Young found a twelve-inch, adjustable crescent wrench, wrapped with gray duct tape, lying near Tammy’s head.
¶ 6. Officer Young called Lieutenant Kelvin McKenzie, with the Canton Police Department, and requested that he come to the crime scene. Lieutenant McKenzie testified that when he arrived at the scene, he noticed that Tammy had been covered with a blanket and that a large kitchen knife was sticking through her neck. Lieutenant McKenzie noted that there was no blood on the knife or on the outside of the blanket. He believed that Reith used the crescent wrench to inflict the injuries to Tammy’s head and face.
¶ 7. Chief Investigator Keith Leavitt, with the Mississippi Attorney General’s Office, testified that he analyzed data from *896 Reith’s and Tammy’s cellular phones. Investigator Leavitt extracted the text messages and the phone calls from both phones and generated a report listing the extracted data. The report showed the text messages exchanged between Reith and Tammy hours before her death. Through the text messages, Reith and Tammy agreed that she would come to Reith’s apartment that evening to visit with Dylan. None of the text messages discussed Dylan’s absence from Reith’s home or their ongoing custody issues.
¶ 8. Dr. Amy Gruszecki performed the autopsy on Tammy’s body. She testified that, during her external examination of Tammy’s body, she found lacerations and bruises to Tammy’s arms and hands. She classified these wounds as “defensive type injuries.” Additionally, Dr. Gruszecki noted that Tammy had been stabbed at least five times. She identified multiple lacerations and bruising around Tammy’s right eye, across the bridge of her nose, over the eyelid of her left eye, and along the side of her left cheek. Tammy’s upper and lower jaw and skull were fractured. Dr. Grusz-ecki identified the cause of death as blunt and sharp-force injuries.
¶ 9. Reith testified that on the day of the incident, he had requested that Tammy come over to play with Dylan. He stated that they agreed in a subsequent phone conversation that they would discuss their custody issues and that Dylan should not be at Reith’s apartment while they talked. Reith further testified that after they finished talking, they intended to pick Dylan up from Reith’s parents’ house. According to Reith, when Tammy arrived at his apartment, she made sure that Dylan was not there before she entered. After walking around the apartment, Tammy turned to Reith and “made a comment that she was going to be taking Dylan out of the state, that now there was nothing that [he] was going to be able to do about it, and that [he] would never, ever see [Dylan] again.” Reith stated that when Tammy turned to leave, he grabbed her to stop her from leaving. His hand brushed against an object as he turned her around to face him. He picked up the object and hit her. He could not remember what he hit her with, could not remember how many times he hit her, and did not remember stabbing her. Reith admitted that he killed Tammy but insisted that he blacked out during the process. He stated that he had never blacked out before the day that he killed Tammy and has not blacked out since.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Jury Instruction S-5

¶ 11. Reith contends that the circuit court erroneously gave jury instruction S-5 because it incorrectly stated the law on deliberate design. Instruction S-5 states:
The Court instructs the Jury that deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable[,] or under circumstances that would reduce the act to a lesser crime.
A deliberate design cannot be formed at the very moment of the fatal aet[;] however, the deliberate design need not exist in the mind of the [defendant for any definite time, not for hours, days or even minutes, but if there is deliberate design, and it exists in the mind of the defendant but for an instant before the fatal act, this is sufficient design to constitute the offense of murder.

Deliberate design may be presumed from the unlawful and deliberate use of a deadly weapon.

*897 Malice aforethought and deliberate design mean the same thing.
¶ 12. Reith argues that the statement “[d]eliberate design may be presumed from the unlawful and deliberate use of a deadly weapon” is a prejudicial, incorrect statement of law. At the outset, we note that Reith’s trial counsel did not object to this part of the instruction at trial. At trial, Reith’s counsel objected to the instruction’s language concerning when deliberate design could be formed. It is well established that a party opposing an instruction must state a contemporaneous objection in specific terms in order to preserve that point for appeal. Boyd v. State, 47 So.3d 121, 124 (¶ 10) (Miss.2010). Further, on appeal a party may not argue that an instruction is erroneous for a reason other than the reason that was the basis for the objection at trial. See Woodham v. State, 779 So.2d 158, 161 (¶ 12) (Miss.2001). Reith’s objection at trial to instruction S-5 did not target the specific language targeted here on appeal. In fact, Reith’s trial counsel suggested an alternative jury instruction in place of S-5 and offered to add the very statement that Reith now seeks to have declared an incorrect statement of the law. Thus, we find Reith’s claim is proeedurally barred.
¶ 13. Procedural bar aside, we agree that the statement contained in jury instruction S-5 regarding the presumption of deliberate design was improper. However, we find that giving the instruction with the included language was harmless error. “Generally, jury instructions are to be read as a whole.” Boyd, 47 So.3d at 124 (¶ 11) (citations and internal quotations omitted). “[D]efects in specific instructions will not mandate reversal when all of the instructions, taken as a whole[,] fairly — although not perfectly — announce the applicable primary rules of law.” Id. (quoting Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 474 (¶ 78) (Miss. 2010)). “If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id. (quoting Harris v. State, 861 So.2d 1003, 1014 (1121) (Miss.2003)).
 ¶ 14. The Mississippi Supreme Court has previously condemned the exact language that Reith challenges on appeal. See Tran v. State, 681 So.2d 514, 518 (Miss.1996). In Tran, the court noted that “malice aforethought, premeditated design, and deliberate design all mean the same thing.” Id. at 517 (quoting Windham v. State, 602 So.2d 798, 801 (Miss.1992)). Furthermore, even though deliberate design may be presumed from the unlawful and deliberate use of a deadly weapon, a jury instruction presenting that presumption “may only be used where the evidence has failed to establish the circumstances surrounding the use of the weapon.” Id. (citations and quotations omitted).
¶ 15. In Tran, the defendant, while riding in a car driven by his codefendant, shot and killed the victim with a shotgun. Id. at 515. The defendant testified that he shot the victim because the victim reached for a gun. Id. A -witness to the shooting testified that she saw the defendant in the car’s passenger seat and saw “the barrel of the gun come out of the passenger side.” Id. at 516. The witness did not see the shooting itself. Id. The codefendant testified that the victim only had his hand on the gun and was not drawing the gun to shoot. Id. at 520-21. The court determined that the facts of the shooting had been sufficiently established during trial through the defendant’s testimony and the testimony of two additional witnesses. Id. at 518. Therefore, the circuit court erred in giving the jury instruction regarding the presumption of malice or deliberate design. Id.
*898 ¶ 16. Just as in Tran, the circuit court erred in allowing the presumption language to remain in jury instruction S-5. Lieutenant McKenzie’s testimony concerning statements that Reith made to him during the booking process established the circumstances surrounding the use of the weapons to kill Tammy. Lieutenant McKenzie testified as follows:
He just asked me about does Mississippi still have the death penalty. I told him, “Yes.” And he said, “Good.”
* * *
I told him, “You’re not eligible for the death penalty.” He said, “Why not?” I asked, “Did you rob Tammy before you killed her?” And he replied, “No.” I asked him, “Did you rape Tammy before you killed her?” He replied, “No.” I replied, “So you didn’t rape or rob her before you killed her. You just beat her to death with a wrench and then stabbed her in the neck with a knife, right? He replied, “Right.”
¶ 17. In addition to this statement from Lieutenant McKenzie, the State presented evidence regarding the hectic relationship between Reith and Tammy before he killed her. Furthermore, even though Reith testified that he does not remember what weapons he used to kill Tammy, he does not deny that he killed her with the crescent wrench or the knife. Because the circumstances surrounding the use of the weapons were established, the jury should not have been instructed that deliberate design could be presumed from the use of the deadly weapon. However, in light of the overwhelming evidence against Reith and the other jury instructions, we find the circuit court’s error harmless. Errors in jury instructions are subject to a harmless-error analysis. See Neder v. United States, 527 U.S. 1, 8-10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); Kolberg v. State, 829 So.2d 29, 49-51 (¶¶ 39-40) (Miss.2002). “[E]ven where error has occurred, [an appellate court] will not reverse a conviction when the overwhelming weight of the evidence supports the guilty verdict,” and “the jury was fully and fairly instructed by other instructions.” Kolberg, 829 So.2d at 49 (¶¶ 37-38) (citations omitted).
¶ 18. Here, jury instruction S-1A presented the elements of murder and heat-of-passion manslaughter to the jury. The last paragraph of instruction S-1A informed the jury that the State must prove every element of either crime beyond a reasonable doubt before the jury could find Reith guilty. We find that, despite the language in instruction S-5, the jury was fully and fairly instructed of the State’s burden in proving Reith’s guilt. Additionally, the State presented overwhelming evidence from which the jury could infer that Reith lured Tammy to his apartment, under the guise of visiting with their son, with the intent to kill her. Although Reith insists that Tammy knew that Dylan would not be there, the evidence demonstrates otherwise. Furthermore, Reith never denied killing Tammy. He only stated that he “blacked out” before he killed her.' We cannot say that the jury would have found Reith innocent had the circuit court refused instruction S-5. Thus, any error in granting jury instruction S-5 was harmless. This issue is without merit.

2. Defense’s Theory of the Case

¶ 19. Reith argues that the circuit court improperly limited his theory of the case because it would not allow evidence of Reith’s mental state, or evidence of Tammy’s pending criminal charges. The circuit court’s admission or exclusion of testimony is reviewed for abuse of discretion. Gillett v. State, 56 So.3d 469, 494 (¶ 61) (Miss.2010). An ap *899 pellate court will not reverse the circuit court’s decision unless “the decision was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id. Additionally, the trial court’s discretion “must be exercised within the scope of the Mississippi Rules of Evidence.” Rogers v. State, 95 So.3d 623, 627 (¶ 13) (Miss.2012) (citing Price v. State, 898 So.2d 641, 653 (¶ 29) (Miss.2005)).

a. Psychological Evaluation

¶ 20. Prior to Reith’s trial, the circuit court excluded a psychological evaluation from Dr. Trudi Zaplac, who characterized Reith as having a passive nature such that “one would expect him to be at high risk to explode with fear and rage.” Concerning Reith’s attachment to his son, Dr. Zaplac noted that Reith’s life
was much more child centered than is typical for a 32[-]year[-]old bachelor.... Thus, a credible threat to permanently take his child away from him would be, psychologically, tantamount to a threat to his own existence; one to which he would be expected to have an extreme emotional reaction.
Dr. Zaplac concluded that Reith “attacked [Tammy] in a fit of rage and [with a] loss of impulse control and that he did not plan her death in advance of the events that caused it.”
¶21. Reith characterizes Dr. Zaplac’s report as “expert psychological evidence of heat of passion.”[1] However, our supreme court has previously stated that, unlike insanity, the issue of heat of passion is considered to be “within the scope of the average juror’s knowledge or experience.” Taylor v. State, 452 So.2d 441, 448 (Miss.1984). Therefore, “the distinction between murder and manslaughter [are] left to the jury for determination without evidence adduced by expert opinion.” Id. As Reith’s defense is that he acted in the heat of passion, the issue here is not his subjective state of mind. The question for the jury was whether Reith acted in the heat of passion and without malice. That question “is an objective one, being whether a reasonable man would have been so provoked. Such a standard presupposes an individual without serious mental and emotional defects.” Id. at 449 (citations and quotations omitted). Thus, where insanity is not the defense, “[t]o permit comment on the subjective intentions of an accused by a witness based on conclusions reached from his observation invades the province of the fact[-]finders. The issue of intent must be decided by the jury from the evidence in the case and not the conclusion of others.” Id. at 450 (quoting Newell v. State, 308 So.2d 71, 73 (Miss. 1975)). Reith did not assert insanity as his defense or any defense in which his state of mind would have been in issue. Therefore, whether he acted in the heat of passion was a consideration for the jury and was not open to expert testimony. This issue is without merit.

b. Tammy’s Pending Criminal Charges

¶ 22. Prior to trial, the circuit court also excluded evidence of Tammy’s pending solicitation charges. The court ruled that *900 the evidence was inadmissible under Rule 609 of the Mississippi Rules of Evidence, as Tammy had not been convicted of solicitation before her death. Additionally, the court determined that, in relation to Rule 403 of the Mississippi Rules of Evidence, the danger of unfair prejudice from the evidence substantially outweighed the evidence’s probative value. Nevertheless, Reith maintains that evidence of Tammy’s pending criminal charges was admissible under Rule 404(a)(2) of the Mississippi Rules of Evidence. We disagree.
¶ 23. Rule 404(a)(2) provides that evidence of the victim’s character is inadmissible except where “[e]vidence of a pertinent trait of character of the victim of the crime [is] offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim [is] offered by the prosecution to rebut evidence that the victim was the first aggressor.” Evidence of the victim’s character is generally allowed when the accused claims that the victim was the initial aggressor and that his actions were in the nature of self-defense or defense of others. M.R.E. 404 cmt. Reith, however, has not claimed that Tammy was an aggressor and that he killed her in self-defense or in defense or another. Therefore, we see no basis for allowing Tammy’s pending criminal charges admitted into evidence, especially where the crimes do not reflect on Tammy’s character for truthfulness, dishonesty, violence, or peacefulness. Accordingly, the circuit court did not err in excluding this evidence. This issue is without merit.

3. Insufficient Evidence

¶ 24. Reith maintains that there is insufficient evidence to support his murder conviction. Particularly, he claims that he was entitled to an acquittal for murder under the principle announced in Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). Weathersby provides that
where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [S]tate, or by the physical facts or by the facts of common knowledge.
Id. Reith did not raise the Weathersby-rule defense at trial or in a motion for a new trial. Consequently, his argument is procedurally barred. See Page v. State, 64 So.3d 482, 489 (¶ 29) (Miss.2011).
¶ 25. Procedural bar notwithstanding, Reith’s argument is without merit. When reviewing a challenge to the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Watts v. State, 78 So.3d 901, 903-04 (¶ 12) (Miss. 2012) (quoting Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). Appellate courts will not disturb the conviction if, “having in mind the beyond[-]a[-]reasonable[-]doubt[-]burden[-]of[-]proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense[.]” Williams v. State, 35 So.3d 480, 485 (¶ 16) (Miss.2010) (quoting Bush, 895 So.2d at 843 (¶ 16)).
¶ 26. Reith’s own assertion that he “blacked out” during this incident prevents a Weathersby-rule application to this case. Even if the court were to accept as fact that he “blacked out,” he could not be considered an eyewitness to the crime, and, consequently, would be unable to pro *901 vide a version of events for the circuit court to accept. Thus, Weathersby is inapplicable. Furthermore, there is sufficient evidence to support the jury’s verdict. The State presented evidence that showed that Reith and Tammy had an ongoing custody dispute. In fact, Reith had petitioned the chancery court two weeks prior to Tammy’s death to prevent her from seeing their son. Additionally, Reith invited Tammy to his apartment by telling her that she could spend time with their son. The testimony showed that their son was not home, and Reith knew that Dylan would not be there when Tammy arrived. Although Reith claims that Tammy knew that they were going to discuss their custody issues and that she requested that their son not be at home, there is no evidence to support his claim other than his bare testimony. The State also presented evidence that Reith beat Tammy using the adjustable crescent wrench wrapped in duct tape and that he stabbed her repeatedly using a kitchen knife. The proximity of the crescent wrench to Reith at the moment that he began to attack Tammy and the alteration of the wrench suggest that Reith planned, prior to Tammy’s arrival at his apartment, to kill her after she arrived.
¶ 27. Based on the above, we find that any rational trier of fact could have found, beyond a reasonable doubt, that Reith acted with deliberate design to kill Tammy. Accordingly, this issue is without merit.

U. Ineffective Assistance of Counsel

¶ 28. Reith contends that his trial counsel’s failure to “properly object” to jury instruction S-5 and his failure to file any post-trial motions constitute ineffective assistance of counsel. In Williams v. State, 73 So.3d 1125, 1128 (¶ 12) (Miss.2011), our supreme court noted that ineffective-assistance-of-counsel claims are analyzed under the two-prong test promulgated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 29. It is well established that: [i]n order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney’s performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial.... Judicial scrutiny of counsel’s performance is highly deferential. There is a strong but rebuttable presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that but for the attorney’s errors, the outcome of the trial would have been different, will [appellate courts] find that counsel’s performance was deficient.
Williams, 73 So.3d. at 1129 (¶ 12) (citing Parker v. State, 30 So.3d 1222, 1233 (¶ 37) (Miss.2010)) (internal quotations omitted). Generally, we do not consider ineffective-assistance-of-counsel claims on direct appeal unless there is sufficient evidence within the record to evaluate the claim. Id. at (¶ 13). However, despite the State’s refusal to stipulate that the record is adequate to allow a review of the merits of Reith’s claims, we find that the record before us is sufficient to address the merits of Reith’s ineffective-assistance claim.
¶ 30. As discussed in Issue 1, jury instruction S-5 included an improper statement, based on the facts of this case, as to the presumption of deliberate design. Therefore, Reith’s trial counsel was deficient for failing to object to instruction S-5. However, as we have determined that inclusion of the language in the instruction was harmless error, Reith cannot meet his burden of proof with respect to the second element — that is, that but for his counsel’s deficient performance, the outcome at trial would have been different.
*902 ¶ 31. Reith also claims that his counsel’s failure to file post-trial motions amounted to ineffective assistance of counsel because that failure prevented him from challenging the weight of the evidence presented against him at trial. He relies on our supreme court’s ruling in Holland v. State, 656 So.2d 1192, 1197 (Miss.1995), for the proposition that counsel’s failure to file post-trial motions amounts to ineffective assistance of counsel. However, Holland is distinguishable from Reith’s case. In Holland, before reaching the defendant’s ineffective-assistance-of-counsel claim, the court concluded that there was insufficient evidence to support his conviction. Id. at 1196-97. This conclusion established the second prong of the Strickland test and supported Holland’s claim that but for his attorney’s deficient performance, there was a reasonable probability that the outcome of his trial would have been different. Id. at 1198. Therefore, Holland actually stands for the proposition that the failure to file post-trial motions amounts to ineffective assistance of counsel in cases where the evidence is insufficient to support the verdict.
¶ 82. Here, unlike the court in Holland, we have concluded that there is sufficient evidence to support the jury’s verdict. Furthermore, Reith has failed to point us to any evidence in the record, and we have found none, to suggest that had Reith’s attorney challenged the weight of the evidence against him, there is a reasonable probability that the circuit court would have granted him a new trial. Therefore, even assuming that his counsel’s failure to file a post-trial motion was deficient, Reith has not satisfied the second prong of Strickland. Accordingly, this issue is without merit.
¶ 33. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., ISHEE AND FAIR, JJ., CONCUR. GRIFFIS, P.J., BARNES, ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. We note that the record does not indicate that Reith offered a proffer of Dr. Zaplac’s qualifications or that the State stipulated to Dr. Zaplac’s qualifications as an expert in this area. Additionally, the State has not raised an objection based on the scientific data, or the lack thereof, supporting Dr. Zaplac’s report. Although the State has not raised these issues, we pause to note that our ruling on this issue in no way implicates that Dr. Za-plac’s "expert testimony” would have been sound under a Daubert analysis. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).